Sandra BLAIR; Jeffrey Burkett; Mertie Hamilton; Jason McKenzie; Richard Music; Ruth Provence; Juanita Rigsby; Teresa Caudill, Plaintiffs,

Virginia Castle; Donald Patton, Plaintiffs–Appellees,

v.

Hobert MEADE, individually and in his official capacity as Johnson County Judge Executive, Defendant–Appellant,

Johnson County Fiscal Court, Defendant.

No. 95–5166.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 15, 1995.

Decided Feb. 16, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied March 28, 1996.*

* Judge Ryan would grant rehearing for the reasons stated in his dissent.

Robert J. Patton (argued), Francis, Kazee & Francis, Prestonburg, KY, Ned B. Pillersdorf (briefed), Pillersdorf, DeRossett & Barrett, Prestonburg, KY, for Virginia Castle and Donald Patton.

Sun S. Choy (argued and briefed), R. Allen Button, Williams & Wagoner, Louisville, KY, for Hobart Meade.

Before NELSON, RYAN, and McKAY,* Circuit Judges.

McKAY, J., delivered the opinion of the court, in which NELSON, J., joined. RYAN, J. (p. 102), delivered a separate dissenting opinion.

## McKAY, Circuit Judge.

Plaintiffs–Appellees Virginia Castle and Donald Patton, both local government employees, sued Defendant–Appellant Hobert Meade for violation of their First and Fourteenth Amendment rights of free speech and association when Mr. Meade allegedly discharged Ms. Castle and Mr. Patton because of their political affiliations. Mr. Meade moved for summary judgment, asserting that he had not violated the First Amendment and, alternatively, that he was entitled to qualified immunity. The district court denied summary judgment on both grounds. Mr. Meade now appeals the district court's denial of qualified immunity.

This case has its genesis in the 1993 election for Johnson County Judge Executive in Kentucky. Mr. Meade ran for the position and defeated the incumbent judge executive Gail Gillem. Ms. Castle and Mr. Patton were employees of the defeated judge executive. Mr. Patton had been the purchasing agent, chief financial officer, and office manager under Mr. Gillem. His responsibilities for these various positions included purchasing office supplies for the courthouse, paying all major bills other than utilities, preparing claim sheets for the fiscal quarter, typing checks and envelopes, and issuing purchase orders. Additionally, he oversaw the timeliness of paper flow in the office.

Ms. Castle was the defeated judge executive's bookkeeper and assistant to the finance officer. Her responsibilities included "typing checks for reoccurring bills, enrolling new employees for insurance, making changes in insurance, COBRA billing, telephone repair, and bookkeeping for the judge/executive." District Court Op. (Jan. 9, 1995), J.A. at 24.

When Mr. Meade came into office, he terminated Mr. Patton's and Ms. Castle's employment. Mr. Meade terminated them because his "office staff would be carrying out his policies, and he wanted people on his office staff that he knew and that he trusted." Appellant Br. at 4. The district court ruled that Mr. Meade was not entitled to qualified immunity because "there is a genuine issue of material fact as to whether these plaintiffs' political affiliations were 'substantial' or 'motivating' factors in Meade's decision not to rehire them, and this is a factual dispute upon which the question of immunity turns."[1] *Id.* at 40. We hold, however, that

---

\* The Honorable Monroe G. McKay, Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

1. The question addressed by the district court, whether plaintiffs' political affiliations were a substantial or motivating factor in Mr. Meade's decision to terminate them, is actually irrelevant to the determination whether Mr. Meade has qualified immunity. The qualified immunity analysis requires consideration of whether a right exists at all, i.e., whether plaintiff has asserted violation of a right, and whether that right was clearly established. The motivation question

Mr. Patton and Ms. Castle have no First Amendment claim because the nature of their jobs did not entitle them to be free from patronage dismissals.

■ When a court determines whether qualified immunity exists, it must first ask "whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Only after the court makes this determination does it consider whether this right was clearly established. *See id.* at 231–235, 111 S.Ct. at 1793–94; *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir.1995). Thus, we must first ask whether the facts as alleged by Plaintiffs state a First Amendment claim. *See, e.g., Siegert*, 500 U.S. at 233–34, 111 S.Ct. at 1793–94 (examining whether facts as alleged by plaintiff stated a claim for violation of a constitutional right).

■ *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), provides that plaintiffs have a cause of · action for patronage dismissal only if party affiliation is not an "appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295.[2] This court fleshed out the *Branti* standard in *Faughender v. City of North Olmsted*, 927 F.2d 909 (6th Cir.1991). Under *Faughender*, we examine the inherent duties of the position in question and the "duties that the new holder of that position will perform." *Id.* at

913. If this examination reveals that the position is inherently political in nature, then political affiliation is an appropriate requirement for the job.

■ Money consistently plays a very important role in politics. As a result, budgetary decisions are among the most significant, and the most political, actions which government officials take. *See, e.g., Hudson v. Burke*, 913 F.2d 427, 432 (7th Cir.1990) (holding that "investigators" for city finance committee are inherently political positions). The efficient and orderly administration of a budget is an integral part of the budgetary process and certainly has key political implications and consequences. Mr. Patton, as the purchasing agent and chief financial officer, appears to have played a supervisory role in the administration of the judge executive's budget. He was responsible for paying bills, preparing claims sheets and issuing purchase orders.

As such, Mr. Patton would have access to information critical to the judge executive's budget decisions. Indeed, it is typical for such executive positions to have access to confidential and political information. He would have familiarity with the county's financial condition and would be in a position to recognize the financial strengths and weaknesses of various county operations. Thus, the nature of Mr. Patton's job put him in an excellent position to contribute to the highly political budget decisions made by the

---

addressed by the district court merely goes to whether the existing right was, in fact, violated.

**2.** Although the district court apparently ignored this issue when considering Mr. Meade's claim of qualified immunity, it actually reached the question under a separate part of its opinion. Specifically, the court held that "Meade has not carried his burden of demonstrating that political loyalty is 'essential to the discharge of [Mr. Patton's] governmental responsibility.'" District Court Op. (Jan. 9, 1995), J.A. at 25. The district court did not make any such determination for Ms. Castle. We construe this part of the district court's holding to mean that it found no genuine issue of disputed fact as to whether Mr. Meade could consider political affiliation for these positions. Thus, we have appellate jurisdiction to rule on this issue. *See Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (holding no appellate jurisdiction of interlocutory

order denying summary judgment on issue of qualified immunity where denial is based on existence of genuine issue of material fact).

Concededly, this court would not have jurisdiction at the interlocutory stage to decide an issue which the district court decided contained a genuine issue of material fact. *See id.* at ——, 115 S.Ct. at 2159. This leaves us without jurisdiction to determine whether political affiliation motivated the defendant in this case because the district court held that a genuine issue of fact existed as to this question.

In another First Amendment case involving qualified immunity, the First Circuit proceeded in a similar fashion. The court found it had jurisdiction to review the legal question whether plaintiff's speech was constitutionally protected, but did not have jurisdiction to review the fact question whether plaintiff's speech was the motivating factor for the action taken against him. *Stella v. Kelley*, 63 F.3d 71, 74 (1st Cir.1995).

judge executive. *See Faughender,* 927 F.2d at 914 (access to confidential and political information indicates political nature of job). The fact that the defeated judge executive had Mr. Patton perform ministerial rather than policymaking tasks does not change the conclusion that the inherent nature of his job made him particularly well-suited to aid in policymaking. *See, e.g., Hudson,* 913 F.2d at 433–34 (fact that some finance committee investigators performed only ministerial tasks did not change conclusion that position of investigator was inherently political); *Matthews v. Town of Blooming Grove,* 882 F.Supp. 1420, 1424 (S.D.N.Y.1995) (fact that bookkeeper only prepared financial figures did not alter conclusion that she could aid in the preparation of the town budget).

Additionally, Mr. Meade asserts that his new chief financial officer will aid him in formulating policy. Although the court need not accept this blanket assertion at face value, it is consistent with our belief that chief financial officers are the type of employees who aid in the formulation of policy. The fact that Plaintiffs have not challenged Mr. Meade's assertion provides further support for the conclusion that a chief financial officer is a position for which political affiliation is an appropriate consideration.[3] *See Faughender,* 927 F.2d at 914. Mr. Meade was entitled to consider political affiliation when firing Mr. Patton.

 Ms. Castle's job was also a position for which political affiliation is an appropriate consideration. Ms. Castle was employed as a bookkeeper and assistant to the chief financial officer. As with Mr. Patton, many of Ms. Castle's duties were ministerial. Nevertheless, it is the nature of the position—its inherent duties—that we must look to. As his assistant, Ms. Castle performed many of the same tasks as Mr. Patton. This leads to the conclusion that the position of assistant financial officer involves some of the same elements of trust and confidentiality associated with a chief financial officer. Generally, the farther removed from the executive, policy-making level an employee is, the less rele-

vant political loyalty becomes. *See, e.g., Faughender* at 916 (distinguishing cases where one employee reported directly to mayor and other employee did not). Here, however, Ms. Castle was only one level removed from an executive position. The facts indicate that Ms. Castle was close to, and played a role at, the executive level. Her position appears to be nothing more than the "alter ego" of the chief financial officer. Thus, Ms. Castle's position was one for which Mr. Meade could appropriately consider political affiliation in his decision to terminate her employment.

Finally, we note that the positions occupied by Mr. Patton and Ms. Castle were somewhat amorphous in nature and included a fairly broad range of responsibilities. *Cf. Rice v. Ohio Dep't of Transportation,* 14 F.3d 1133, 1142 n. 9 (6th Cir.1994) (stating that broad responsibilities, not well defined, make it more likely that job is a policymaking position), *cert. denied,* —— U.S. ——, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994). For example, Mr. Patton served not only as chief financial officer, but also as purchasing agent and office manager. Ms. Castle served as bookkeeper and assistant financial officer. From these facts it appears that no strict division of labor was necessary for the orderly operation of the judge executive's office. This leads to the conclusion that employees' duties may vary from one administration to the next. If we were to fashion a rule limiting Mr. Meade's ability to fire such employees, we would in effect allow a prior judge executive to define for his successors how the office is run. Such a rule would hamper the new administration's ability to implement its policies. As we stated in *Faughender:*

> It should be clear that policies can only be implemented with the help of staff persons entrusted to carry out certain tasks. A newly-elected administration is surely hampered in implementing its new policies if it cannot change a position's responsibilities solely because the current incumbent does not now perform the new duties. To hold otherwise would be contrary to the

---

**3.** Had Plaintiffs contested Mr. Meade's assertion that his employees would aid him in making policy, we certainly would have required Mr.

Meade to present specific evidence of how his employees would do this.

recognized exception to the first amendment's general bar on using political motivations to govern employment decisions affecting public employees.

*Faughender*, 927 F.2d at 915. Under these facts, and considering the political nature of the jobs at issue, we are loathe to hinder Mr. Meade's ability to organize his office as he wishes.

With the conclusion that Mr. Patton and Ms. Castle have failed to assert the existence of any constitutional right, we need not reach the issue whether any right was clearly established. Even assuming the terminations in this case were motivated by political affiliation, Plaintiffs do not have a cause of action. Thus, the district court should have granted summary judgment for Mr. Meade.

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with directions to dismiss Mr. Patton's and Ms. Castle's cause of action.

RYAN, Circuit Judge, dissenting.

We have no jurisdiction over this appeal, and therefore I respectfully dissent.

The Supreme Court recently clarified the criteria for the appealability of interlocutory trial court decisions denying qualified immunity. In *Johnson v. Jones*, —— U.S. ——, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), the Court considered a case in which the district court "resolved a fact-related dispute about the pretrial record, namely whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial." *Id.* at ——, 115 S.Ct. at 2153. Based on a number of policy considerations, the Court "h[e]ld that the defendants cannot immediately appeal this kind of fact-related district court determination," *id.*, observing that "interlocutory appeals ... are the exception, not the rule," *id.* at ——, 115 S.Ct. at 2154.

Indisputably, in this case the district court's basis for denying the defendant's request for summary judgment on grounds of qualified immunity was the existence of a factual dispute as to Meade's motivation for terminating the plaintiffs. While I agree with the majority that the district court's analysis may have been misguided, that does not lead me to the conclusion that this court is entitled to take jurisdiction over the appeal in order to determine whether there is *another* basis on which we can resolve the case without reference to the factual dispute that was the district court's basis. Irrespective of whether the district court's opinion was a model of qualified immunity analysis, the pertinent issue is whether the decision of the district court that was appealed, is appealable. Since the basis for the denial was the existence of a disputed fact, it was not.

The *Johnson* opinion simply held that a defendant may not immediately appeal a district court's order denying him the defense of qualified immunity when the order is based on a determination that the pretrial record sets forth a genuine issue of fact for trial. The Court did not indicate that a court of appeals may ignore the factual basis for the trial court's decision and, instead, ferret out a legal issue, and then reverse on legal, rather than factual, grounds. The rule is that the district court's order is "not appealable" when it relies on the conclusion that there is a genuine issue of material fact, *id.* at ——, ——, 115 S.Ct. at 2153, 2156; the rule is *not* that the order may or may not be appealable, depending on whether there is the potential for reversing based on a different rationale. Indeed, such an exemption from the general rule would make the rule meaningless, and would destroy the benefits of efficiency and economy that the rule is meant to confer, *see id.* at ——, 115 S.Ct. at 2154, because a court of appeals would always have to exercise jurisdiction over a qualified immunity appeal in order to consider whether it could be disposed of on other legal grounds, *see id.* at ——, 115 S.Ct. at 2158. In short, I believe *Johnson* teaches that what is controlling in determining whether there is appellate jurisdiction in a qualified immunity interlocutory appeal is the basis, factual or legal, for the district court's ruling, not some other theory the parties may argue on appeal, or this court may think preferable.