Carnell **ROBERSON**, Plaintiff,

v.

George **VOINOVICH**, et al., Defendants.

Civil A. No. 2:93–CV–250.

United States District Court,
S.D. Ohio,
Eastern Division.

March 5, 1996.

---

Alexander Morris Spater, Spater, Gittes, Schulte & Kolman—2, Columbus, OH, for Carnell Roberson, plaintiff.

Rita Sue Eppler, Ohio Attorney General—2, Jack Wilson Decker, Carla R. Dowling–Fitzpatrick, Ohio Attorney General—2, Marion H. Little and Stuart G. Parsell, Zeiger & Carpenter—2, Columbus, OH, for George V. Voinovich and Donald Jakeway.

## *OPINION AND ORDER*

KING, United States Magistrate Judge.

Plaintiff, formerly Chief of Facilities Management for the Ohio Department of Development, brings this action under 42 U.S.C. § 1983, alleging that defendants George V. Voinovich, Governor of the State of Ohio, and Donald Jakeway, Director for the Ohio Department of Development, unlawfully terminated her from employment with the State of Ohio on account of her political affiliation in violation of the First and Fourteenth Amendments. Pursuant to the provisions of 28 U.S.C. § 636(b), the parties have consented to disposition by the undersigned. This matter is now before the Court on defendants' motion for summary judgment on the basis that political affiliation is an appropriate criterion for the position of Chief of Facilities Management.[1]

### Background

Plaintiff, a Democrat, worked in the Department of Development from April 1988 to the date of her termination in March 1991. Plaintiff ascended to the position of Chief of Facilities Management in October 1988, during the administration of Governor Richard F. Celeste, a Democrat. Plaintiff was terminated during the early months of the administration of defendant Governor Voinovich, a Republican who replaced Governor Celeste.[2] The complaint seeks backpay and compensatory and punitive damages.

### Standard of Review

■ The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

---

1. Pursuant to a motion by defendants, the Court bifurcated this matter to allow defendants to file a dispositive motion on that issue alone. *Opinion and Order* (Nov. 1, 1995).

2. Celeste was Governor from 1983 until January 1991.

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12.

### Discussion

▇▇ The First Amendment generally prohibits the dismissal of a public employee on the basis of political affiliation. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). The Supreme Court has recognized, however, that political affiliation is an appropriate qualification for certain governmental positions. *Id.* "[T]he ultimate inquiry ... is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980); *see also Rice v. Ohio Dep't of Transportation*, 14 F.3d 1133, 1142 (6th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994). In making that determination, the Court must consider the inherent duties of the position, and the "duties that the new holder of that position will perform." *Faughender v. City of North Olmsted*, 927 F.2d 909, 913 (6th Cir.1991). Descriptions of the actual duties performed by past officeholders may be informative as to the position's inherent duties. *Clark v. Voinovich*, Case No. C–2–93–087, slip op. at 4 (S.D.Ohio Aug. 24, 1995) (unreported) (citing *Peters v. Delaware River Port Auth.*, 16 F.3d 1346 (3d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 62, 130 L.Ed.2d 20 (1994)).

The United States Court of Appeals for the Sixth Circuit recently considered issues similar to those presented in this case. In *Blair v. Meade*, 76 F.3d 97 (6th Cir.1996), the Court of Appeals considered the terminations of two employees, Virginia Castle and Donald Patton, of a county judge executive in Kentucky. The Court held that both employees had occupied positions for which political affiliation was an appropriate consideration.

Patton was the purchasing agent, chief financial officer, and office manager, who was responsible for purchasing office supplies for the county courthouse, paying all major bills other than utilities, preparing claim sheets for the fiscal quarter, typing checks and envelopes, issuing purchase orders, and overseeing the timeliness of paper flow in the office. *Blair*, 76 F.3d at 99. The Court held that Patton had enjoyed access to confidential and political information, had been in a position to recognize the financial strengths and weaknesses of various county operations, and had consequently been

in an excellent position to contribute to the highly political budget decisions made by the judge executive.... The fact that the defeated judge executive had Mr. Patton perform ministerial rather than policymaking tasks does not change the conclusion that the inherent nature of his job made him particularly well-suited to aid in policymaking.

*Blair*, 76 F.3d at 100–01 (citations omitted).

Castle was a bookkeeper and assistant to the chief financial officer. The Court held that, although Castle had performed many ministerial duties, her position as an assis-

tant to Patton had involved elements of trust and confidentiality. *Blair,* 76 F.3d at 101.

The Court added

> Finally, we note that the positions occupied by Mr. Patton and Ms. Castle were somewhat amorphous in nature and included a fairly broad range of responsibilities.... [E]mployees' duties may vary from one administration to the next. If we were to fashion a rule limiting [the defendant's] ability to fire such employees, we would in effect allow a prior judge executive to define for his successors how the office is run. Such a rule would hamper the new administration's ability to implement its policies.

*Blair,* at 101.

■ In support of their motion, defendants rely upon plaintiff's resumé, the Transition Manual for the Ohio Department of Transportation prepared by the Celeste Administration, and affidavits of witnesses. Defendants argue that the Chief of Facilities Management exercises broad administrative and planning responsibilities regarding the allocation of state resources, makes decisions in areas presenting room for political disagreement, and is privy to confidential information and communication.

The position of Chief of Facilities Management, which is unclassified,[3] reports directly to the Deputy Director for Administration, who in turn reports directly to the Director of the Department. *Affidavit of Michael E. Eberly,* ¶¶ 1, 3, 5 (exhibit 7 of *Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment*). The Chief of Facilities Management oversees four sections, including Management Information Systems ["MIS"],[4] Office Services, Fleet Management, and contract compliance for the Department's minority set-aside program. *Affidavit of Michael E. Eberly,* ¶ 6.

The Transition Manual prepared by the Celeste Administration explains the duties of the position more fully:

> *Facilities Management* oversees Office Services which performs the mail handling and delivery along with telecommunications management. Another section is the Management Information Systems (MIS) group which provides the acquisition, installation, limited training, and system analysis of the agency's computer systems. Other areas of responsibilities include: Acquisition and management of office space and equipment, including negotiation of leases and service agreements; fixed asset management (inventory control); and fleet management. The Contract Compliance Officer monitors the agency's purchasing activities to promote compliance with set-aside requirements.

*Transition Manual, Ohio Department of Development,* at 4–33 (exhibit 17 of *Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment*).

Plaintiff's own resumé describes her duties as Facilities Management Chief in a manner remarkably similar to the description set forth in the Transition Manual:

> Managed the Office Services unit which is responsible for telecommunications management along with mail handling and delivery. Established all policies for Development's Management Information Systems (MIS) group which provides the acquisition, installation, training and systems analysis of the department's computer systems. Directed the department's administrative functions involved with the acquisition and management of service agreements; fixed asset management (inventory control) and review all maintenance agreements; and fleet management. Managed the Contract Compliance Office which monitors the department's purchasing activities to promote compliance with set-aside requirements.

---

**3.** Employees of the State of Ohio are divided into classified and unclassified service. Ohio Rev. Code § 124.11. A classified employee may be terminated or disciplined only for cause. Ohio Rev.Code § 124.34.

**4.** It appears that MIS has, since plaintiff's termination, been placed outside the control of Facilities Management pursuant to a reorganization in 1993. *See Affidavit of David Saffle,* ¶ 4 (exhibit 10 of *Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment*).

Negotiated lease agreements for the Tokyo, Hong Kong, Belgium and Lagos offices.

Resumé, at 3 (exhibit 14 in *Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment* (Nov. 15, 1995)).

A review of the Transition Manual and plaintiff's resumé reflects that the position of Chief of Facilities Management is inherently political. Those documents indicate that plaintiff managed a diverse group of activities, established policies, and negotiated contracts on behalf of the Department.

Plaintiff contends that she did not enjoy broad discretion or responsibility. Plaintiff argues that she was a technical mediary, and that she had no authority to hire or fire, did not have direct purchasing authority, was not a conduit of information, did not have extensive contact with the public, and did not make speeches on behalf of the Department or its Director. Furthermore, plaintiff contends that she had no discretion with regard to the distribution of funds. Plaintiff avers that her authority with respect to purchases was limited to recommendations, and that she had no discretion to reject requests for funds. *Affidavit of Carnell Roberson*, ¶ 6.

To support her contentions, plaintiff avers that she did not negotiate leases for overseas offices on behalf of the Department and that she had no input regarding the locations or day-to-day activities of those offices. *See Affidavit of Carnell Roberson*, ¶¶ 3–6 (attached as exhibit 1 to *Plaintiff's Memorandum Contra Defendants' Motion for Summary Judgment* (Jan. 22, 1996)). Plaintiff argues instead that she merely confirmed that such leases complied with Ohio law.

Robert Mohr, the current Chief of Facilities Management, avers that he is responsible for maintaining the leases for all Department offices. *Affidavit of Robert Mohr*, ¶ 14 (attached as exhibit 8 to *Appendix of Exhibits in Support of Defendants' Motion for Summary Judgment*). Mohr further avers that, as a result of defendant Voinovich's effort to fulfill a campaign commitment to decentralize the Department, he negotiated and now maintains leases for eight regional Department offices in Ohio.[5] *Affidavit of Robert Mohr*, ¶ 14–19.

Mohr avers that the Fleet Management section of the Office of Facilities Management purchases and maintains fifty-one automobiles for Department use. *Affidavit of Robert Mohr*, ¶ 8. Mohr further avers that, as Chief, he oversees the day-to-day operations of the Fleet Management section. *Affidavit of Robert Mohr*, ¶ 11.

Like the plaintiffs in *Blair, supra*, plaintiff in this case was an office manager who oversaw a substantial flow of information. Although plaintiff argues that the position of Chief of Facilities Management is not amorphous and does not carry a broad range of responsibilities, plaintiff's own resumé and the Celeste Administration's job description for the position undermine those arguments. Although there is no evidence that the Chief of Facilities Management exercises any actual authority to distribute funds, the Chief plays a supervisory role in the administration of the budget and is in a position to significantly impact the distribution of substantial funds.

That plaintiff may have performed ministerial duties as a "technical mediary"[6] does not change the fact that the position is inherently political. *See Blair*, 76 F.3d at 100–01. The record reflects that the Chief is privy to confidential and political information regarding the leasing of property and the distribution of funds. The Chief of Facilities Management is in a position to significantly affect highly political decisions made in the Department. *See Faughender*, 927 F.2d at 914. The administration of defendant Governor Voinovich is entitled to place individuals of his own choosing in this position.

■ Plaintiff notes that Michael Eberly, deputy director for administration at the Department from January 1991 to March 1994, and defendant Jakeway admitted in depositions that politics is not an appropriate consideration for the position of Chief of Facili-

---

5. According to Mohr, he was able to place four remaining regional offices in space available in State buildings. *Affidavit of Robert Mohr*, ¶ 19.

6. *Affidavit of Carnell Roberson*, ¶ 6.

ties Management. (Jakeway Depo. Tr. at 86–87, Eberly Depo. Tr. at 182–83). The opinion of an individual with hiring authority is not determinative, although it may be a factor, of the issue of whether politics is an appropriate criterion for the position in question. *Cf. Balogh v. Charron*, 855 F.2d 356 (6th Cir.1988) ("The test of confidential employment does not depend … on the subjective view of the judge concerning the need for intimacy or trust. It is a more objective standard. It depends on the function of the job."). That is because the duties of the position at issue are in some measure likely to be framed by the individual with hiring authority.

Nevertheless, the opinions of Eberly and defendant Jakeway are not determinative. Merely because Eberly and defendant Jakeway have not made political affiliation a requirement for the position does not necessarily demonstrate that the position itself is not inherently political. Here, the affidavit testimony of Mohr and Eberly in addition to plaintiff's resumé and the description of the position of Chief of Facilities Management in the Transition Manual reflect that the position is, consistent with *Blair v. Meade, supra*, inherently political.

Accordingly, the Court holds that political affiliation is an appropriate consideration for the position of Chief of Facilities Management in the Department of Development. Defendants' motion for summary judgment is therefore well-taken.

### Conclusion

WHEREFORE, defendants' motion for summary judgment is GRANTED. The Clerk shall enter FINAL JUDGMENT for defendants.