107 F.3d 11
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra BLAIR, Mertie Hamilton, Jason McKenzie, Richard
Music, Ruth Provence, Juanita Rigsby, and Teresa
Caudill, Plaintiffs-Appellants,
v.
Hobert MEADE, Individually and in his Official Capacity as
Johnson County Judge Executive, and Johnson County
Fiscal Court, Defendants-Appellees.
 No. 95-5563.
 United States Court of Appeals, Sixth Circuit.
 Feb. 14, 1997.
 
 Before: RYAN and NORRIS, Circuit Judges; and DOWD, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs appeal the order granting the defendants' summary judgment motion and dismissing plaintiffs' claims in this civil rights action. Plaintiffs claim that they were denied employment in their non-political county jobs because they opposed or were perceived as opposing defendant Hobert Meade's candidacy for election to the post of county judge executive. We affirm the district court's judgment dismissing the claims of the plaintiffs.
 
 I.
 
 2
 Defendant Hobert Meade defeated the incumbent Gail Gillem in the 1993 general election for Johnson County Judge Executive. Plaintiffs were Johnson county employees during Gillem's administration but were not rehired for Meade's administration. Plaintiffs allege that Meade refused to nominate them to be rehired because of their opposition to his candidacy, or their association with those who opposed him. They allege that Meade's politically-motivated decision and the Johnson county fiscal court's approval of Meade's recommendations violated the First Amendment.
 
 
 3
 The appointments plaintiffs held to their county jobs all automatically terminated at the end of Gillem's term of office. To continue their employment, plaintiffs had to be recommended by Meade to the fiscal court, which had the authority to accept or reject Meade's nominations. Before the district court, the defendants argued that the plaintiffs had failed to establish that political considerations were a substantial or motivating factor in the defendants' decision not to rehire the plaintiffs. The defendants also presented evidence that, in any case, Meade would have reached the same decision not to rehire Juanita Rigsby, Richard Music, Jason McKenzie, Ruth Provence, and Sandra Blair--because of budget constraints and/or job elimination--even in the absence of their protected First Amendment conduct.
 
 
 4
 We have previously ruled on some aspects of this case when defendant Meade appealed the district court's earlier denial of summary judgment against two plaintiffs. In the earlier case, the district court denied summary judgment as to Donald Patton's and Virginia Castle's claims and denied Meade qualified immunity. The district court found that Patton and Castle had introduced evidence creating a genuine issue of fact as to Meade's reasons for terminating their employment; Meade admitted that these two plaintiffs were not rehired because he only wanted office staff who would carry out his policies and whom he could trust--a statement that could be construed as admitting political motivation. The court further determined that Meade had not carried his burden of demonstrating that political loyalty was essential to performance of the duties of these two plaintiffs' positions and denied his motion for summary judgment. Defendant Meade appealed the district court's denial of summary judgment.
 
 
 5
 On appeal, we determined that Meade was entitled to summary judgment because party affiliation was an appropriate requirement for Patton's and Castle's positions. Blair v. Meade, 76 F.3d 97, 100 (6th Cir.1996). Patton was employed as the purchasing agent, chief financial officer, and office manager under Gillem. We determined that, although Patton performed many ministerial tasks, his job position allowed him to play a supervisory role in the administration of the judge executive's budget and gave him access to information critical to the judge executive's budget decisions and to confidential and political information about the county's financial condition and operations. The nature of his job, therefore, put Patton in a position to contribute to the judge executive's highly political budget decisions. Castle was employed under Gillem's administration as the judge executive's bookkeeper and assistant to the financial officer. Many of the tasks she performed under Gillem's administration were ministerial, however, we determined that the inherent nature of her position was similar to Patton's. Castle was essentially the "alter ego" of the chief financial officer, only one level removed from an executive position, and played a role at the executive level. Finding that Patton and Castle had been terminated from jobs for which political affiliation was an appropriate job requirement, we reversed the denial of summary judgment on their claims and remanded to the district court with directions to dismiss Patton's and Castle's causes of action. Id. at 102.
 
 
 6
 The district court has now granted summary judgment as to the remaining plaintiffs and dismissed their claims on the grounds that they all failed to present evidence from which a reasonable jury could conclude that plaintiffs' political affiliations were a substantial or motivating factor in Meade's decision not to rehire them; these plaintiffs now appeal that dismissal.
 
 II.
 
 7
 To establish that an employment decision violated his First Amendment rights, a plaintiff need not assert that he had an entitlement to the position, promotion, or transfer. Boger v. Wayne County, 950 F.2d 316, 321 (6th Cir.1991). The Supreme Court has specified that
 
 
 8
 even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially his interest in freedom of speech.
 
 
 9
 Rutan v. Republican Party of Illinois, 110 S.Ct. 2729, 2736 (1990) (quoting Perry v. Sindermann, 408 U.S. 593, 597 (1972)). The government is not always prohibited from denying employment because of a person's political views, however. It is widely recognized that an elected official, in order to implement his policies effectively, must be permitted to select like-minded individuals to fill certain positions. As a general matter, patronage dismissals violate the First Amendment except where "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518 (1980). To justify a political discharge, "governments need only show that the person subject to dismissal occupied a position that would permit obstruction of policy implementation." Faughender v. City of N. Olmsted, 927 F.2d 909, 915 (6th Cir.1991) (citing the plurality in Elrod v. Burns, 427 U.S. 347, 367 (1976)). These principles are applied equally to firings, hirings, transfers, promotions, and recalls from layoffs. Rutan, 110 S.Ct. at 2729; see also Faughender, 927 F.2d at 913.
 
 
 10
 A position that is political, confidential, or policy-making may well be a position that is legitimately conditioned upon party affiliation, however, a position may be political but not confidential or policymaking, and not every policymaking or confidential position is appropriately political. Rice v. Ohio Dep't of Transp., 14 F.3d 1133, 1139-40 (6th Cir.), cert. denied, 114 S.Ct. 2678 (1994). Thus, "[t]he extent to which a particular job has a policymaking dimension is still relevant ... but the 'ultimate inquiry,' Branti teaches, 'is whether party affiliation [or sponsorship] is an appropriate requirement for the effective performance of the public office involved.' " Id. at 1140 (footnote omitted) (quoting Branti, 445 U.S. at 518).
 
 
 11
 In determining whether "party affiliation is an appropriate requirement for the effective performance of the public office involved," Branti, 445 U.S. at 518, courts examine the inherent nature of the job position itself, rather than the nature of the job as labeled in the statute, Rice, 14 F.3d at 1142-43, or the nature of the position as it was performed by the plaintiff under the incumbent's administration, Williams v. City of River Rouge, 909 F.2d 151, 155 (6th Cir.1990). In other words, courts determine the "outer limits" of what is appropriately political. Within those limits, however, the legislative body's designation of a position as one that requires the service of a political loyalist, or as one that is removed from political considerations, carries some weight, as does the electoral winner's plan for the role of the position in the new administration. "[T]he legislature's decision as to whether a particular job should be classified as political or nonpolitical is at least entitled ... to some deference." Rice, 14 F.3d at 1142-43 (internal quotation marks and citation omitted). If party affiliation is appropriately required for performance of "the duties that the new holder of [a] position will perform," the position is not protected from patronage dismissal even if party affiliation is not relevant to the position as it was performed under the previous administration. Faughender, 927 F.2d at 913. Thus, a mayor may make the organizational choice to "bestow new, politically-significant duties upon staff positions according to his wish." Id. at 914. "[E]mployees duties may vary from one administration to the next." Blair, 76 F.3d at 101-02.
 
 
 12
 If the plaintiff's job is one that is protected under the First Amendment against patronage dismissal, the plaintiff still bears the burden to show that "his conduct was constitutionally protected, and that this conduct was a 'substantial factor'--or to put it in other words, that it was a 'motivating factor' in the Board's decision not to rehire him." Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 287 (1977) (footnote omitted). A plaintiff may, of course, rely on circumstantial evidence to prove that his political activities caused his discharge. If the plaintiff carries that burden, the defendant must show "by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's] reemployment even in the absence of the protected conduct." Id. These are issues of fact that are not ordinarily decided on a motion for summary judgment. Boger, 950 F.2d at 322-23.
 
 III.
 
 13
 We review a district court's grant of summary judgment under the de novo standard of review. Faughender, 927 F.2d at 911. This court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1310 (6th Cir.1989) (citation omitted). In conducting this review, the court draws all justifiable inferences in favor of the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), however, the non-moving party must still establish that there is a "disagreement regarding an item of material fact" in order to prevail on appeal, Faughender, 927 F.2d at 912. "The evidence presented must be sufficient to permit the plaintiff to recover if accepted by the jury." Id.
 
 IV.
 A. Sandra Blair
 
 14
 Under Gillem's administration, Blair made road signs and numbered houses for the implementation of a 911 system and occasionally performed secretarial duties when they were needed. Blair provided evidence of Meade's political differences with her--perhaps enough to establish, for the purposes of granting summary judgment, that Meade was motivated in part by political differences not to rehire Blair. However, Blair's claim does not survive summary judgment because Meade presented essentially uncontested evidence that Blair's job was effectively eliminated when another county began operating the 911 system. Blair testified that she did not know if anyone replaced her in the position she held.
 
 
 15
 Thus, the district court correctly dismissed Blair's claim because, "[e]ven if Meade's statement [to Blair's husband, Toy, that his support for Meade 'could mean a job for Toy or Sandra,'] rose to the level of establishing that Blair's political activities were 'substantial' or 'motivating' factors in his decision not to rehire [her], Meade ... sufficiently established that Blair would not have been rehired [anyway] because her job" was completed and eliminated in Johnson County. We affirm the district court's grant of summary judgment on Blair's claim.
 
 B. Mertie Hamilton
 
 16
 Hamilton was employed as Gillem's receptionist. She answered the phone, greeted guests, typed, and did general office work. The district court found that there was "a genuine issue of material fact with regard to whether Hamilton would have been rehired had she not been associated with Gillem, using the same analysis used with Patton and Castle." That is, Hamilton was employed in the same office in which Patton and Castle worked, and Meade's admission that he only wanted people he could trust working in that office created a genuine issue of material fact as to his motivation for declining to rehire employees in that office. However, the court dismissed Hamilton's claim because the court found that "Hamilton, as a receptionist, was an employee who served at the judge/executive's pleasure pursuant to K.R.S. § 67.711(1)"[1]; the court reasoned that "even though Meade may have discharged Hamilton because of [Hamilton's] political association with Gillem, she was subject to such a discharge under K.R.S. § 67.711(11)." This was error. Courts may not rely exclusively on the legislative designation of a position as political or nonpolitical.
 
 
 17
 Judges Norris and Dowd are satisfied, however, that the district court properly awarded summary judgment for the defendants on Hamilton's claim.
 
 
 18
 This court has recognized that the duties of a mayor's secretary are such that political affiliation represents an appropriate requirement for the effective performance of the position. Faughender, 927 F.2d at 913-14. This is so because the duties involve "functions in relation to the flow of information, whether by writing, speech, or personal visit, to and from the mayor's office, that the mayor wants the secretary to perform." Id. We have recently reiterated our view that a public employee who controls the lines of communication between policy makers with discretionary authority is subject to political patronage hiring. McCloud v. Testa, 97 F.3d at 1536, 1557 (6th Cir.1996).
 
 
 19
 Although Hamilton did not serve as the private secretary of Gillem, we nonetheless conclude that her position fell within the category of an employee who controlled the lines of communication. As noted earlier, this court has already held that the positions filled by Castle and Patton were subject to political considerations because they involved discretionary authority delegated by the county judge executive. Blair, 76 F.3d at 100-01; see McCloud, 97 F.3d at 1557. Hamilton's testimony indicates that she served as the initial contact between the public and defendant, answering telephones and "greeting people off the street." Moreover, her position required her to convey information between individuals within the office, including Castle, which would inevitably involve communications regarding policy. In our view, the combination of interaction with the public and access, however limited, to policy determinations leads us to conclude that Hamilton's role as receptionist falls within the "confidential employee" category as defined by McCloud. Accordingly, we hold that defendant is entitled to summary judgment with respect to her claim.
 
 
 20
 Judge Ryan disagrees and would vacate the summary judgment dismissing Hamilton's claim and remand to the district court for a determination whether political affiliation was an appropriate requirement for Hamilton's job, given the nature of her duties and the duties Meade intended her to perform during his administration.
 
 C. Jason McKenzie
 
 21
 McKenzie was a laborer for the county. His mother and father supported Gillem in the election, but McKenzie offered almost no evidence that Meade knew of McKenzie's--or McKenzie's family's support--for Gillem. McKenzie claimed that Meade told a third party that McKenzie had initially been hired by Gillem for political reasons and that this third party attributed Meade's refusal to rehire McKenzie to Meade's belief that McKenzie had originally been hired for political reasons by Gillem's administration. The district court found that McKenzie failed to offer evidence that could establish that McKenzie's protected activities were a substantial or motivating factor in Meade's refusal to rehire McKenzie. We agree and affirm the grant of summary judgment on McKenzie's claim.
 
 D. Richard Music
 
 22
 Under Gillem's administration, Music was employed as a laborer for the county Road Department, a position that is protected from patronage dismissals, and was not rehired by Meade. Music's parents were active in Gillem's campaign, and Music supported Gillem by displaying a bumper sticker on his car. As evidence of retaliation, Music testified that Meade told Music's parents that Music would have a job if Meade won the election:
 
 
 23
 Judge Meade came in and asked my dad to vote for him and Dad said he couldn't and he was sorry. Judge Meade said, "Why?" Said, "Are you obligated?" My father said, "In a way. Mr. Gillem done me a favor and I want to do him one." He said, "Well, Mr. Music, I'll do you favors also." And Dad said, "I'm sorry, I just can't do it." And he said, "Well, that makes me angry," and walked out of the store. Slammed the door behind him.
 
 
 24
 Music was not mentioned in the above conversation, but Meade allegedly came back a week later and spoke to Music's mother. Music's mother asked Meade if he thought that Music would have a job after the election, and Meade said that if he got elected, Music would have a job. Meade gave Music's mother campaign materials and asked her to vote for him, but she did not say if she would or would not vote for Meade. After the election, Music asked Meade to rehire him, and Meade said that he would have to check if Music was qualified and if Meade's budget would allow him to rehire Music.
 
 
 25
 Meade cites "budget constraints" as the reason that Music was not rehired. Meade did not know the specific scope of the budget constraints until after he had made his decision about Music, but the district court found that Meade knew at the time he made his hiring decisions that the county's finances were "pretty well exhausted." Music had the least seniority of anyone in the road department. Meade subsequently hired two mechanics to repair county vehicles rather than pay the market rate to have them fixed, and these mechanics sometimes also performed the kind of work that Music had done.
 
 
 26
 The district court concluded that Music did not offer evidence sufficient to convince a trier of fact by a preponderance of the evidence that Music's exercise of his First Amendment rights was a substantial or motivating factor in Meade's decision not to rehire him. The district court further concluded that, in any case, Meade presented sufficient evidence to establish that he would have made the same decision even in the absence of Music's protected activities. We are unable to say that the district court erred.
 
 
 27
 There is evidence to suggest that Music was let go primarily so that he could be replaced by employees who could save the county money by repairing county vehicles. While there is also evidence to suggest that Music's employment was terminated because of Music's First Amendment activities, that evidence is almost entirely hearsay and is not sufficient to create a genuine issue of material fact. We affirm the grant of summary judgment as to Music's claim.
 
 E. Ruth Provence
 
 28
 As an enforcement officer for the solid waste department during Gillem's administration, Provence sent letters to citizens who were not complying with the solid waste ordinance, answered garbage collection questions, arranged for the issuance of summonses to enforce compliance, and investigated dumping complaints. Provence was not rehired by Meade. Provence testified that she supported Gillem in the election, but the only evidence she offered of Meade's alleged retaliatory motive was that Meade had asked her husband for his vote "since I know your wife works for the county." Provence's husband was known in the community to have been active in a different political party than was Meade; Provence's husband had previously run for county commissioner in a primary on the opposing party's ticket. After the election, when Meade told Provence that she was not going to be rehired, he said, "Well, tell Paul [Provence's husband] I said hello."
 
 
 29
 Meade claimed that Provence was replaced by Willard Burton, a more qualified employee with more seniority in county employment though not in the same position that Provence had held. Burton was hired to perform combined road department and solid waste department duties, thereby saving the county money. The district court concluded that Provence failed to introduce evidence that could establish that Provence's political activities were a substantial or motivating factor in Meade's decision not to rehire her. We agree. Plaintiff has presented no evidence of politically-motivated hiring decisions; she has alleged only that she was not rehired. We affirm the district court's grant of summary judgment on Provence's claim.
 
 F. Juanita Rigsby
 
 30
 Rigsby was employed during Gillem's administration as a senior citizens' aide but was not recommended for rehiring by Meade. Rigsby testified that she put up posters, talked to people, and displayed bumper stickers and yard signs in support of Gillem. Rigsby further stated that she advised Meade of her support for Gillem at a senior citizens' party. Meade cited budget constraints and Rigsby's lack of seniority as the reason that she was not rehired. The district court concluded that Rigsby had not introduced sufficient evidence "to establish by a preponderance of the evidence that Gillem's First Amendment activities were a 'substantial' or 'motivating' factor in Meade's decision not to rehire her," and that her retaliation claim rested upon "conclusory allegations, improbable inferences, and unsupported speculation." We agree. There is no evidence that Rigsby was the victim of a patronage dismissal; she has shown only that she was not rehired. We affirm the grant of summary judgment on Rigsby's claim.
 
 G. Teresa Caudill
 
 31
 Caudill was employed as a part-time secretary for judge-executive Gillem and a secretary at the county garage, but was not rehired by Meade. As evidence of Meade's motive in declining to rehire her, Caudill offered the fact that she had displayed a yard sign supporting Gillem and that her husband had distributed campaign material for Gillem. Caudill testified that one of Meade's supporters may have seen her husband distributing Gillem's campaign materials. The district court dismissed Caudill's claim as a frivolous claim based on unsupported inference. We agree. There is no evidence that Meade knew and acted upon his knowledge of Caudill's political activities when he chose not to rehire her. We affirm the grant of summary judgment on Caudill's claim.
 
 V.
 
 32
 All of the plaintiffs argue that the evidence "presented a jury issue as to whether the discharge of Plaintiffs by Defendants was the result of the custom or policy of Johnson County." It is unclear whether plaintiffs are appealing the district court's dismissal of the claims against the fiscal court on the grounds set forth in Christian v. Belcher, 888 F.2d 410 (6th Cir.1989), or are appealing the district court's ruling for the plaintiffs that Meade is the final decisionmaker with regard to the challenged employment decisions, and that his decisions therefore constitute the policy of the county and establish a basis for holding the county liable. In either case, their arguments present no basis for reversing the district court's judgment.
 
 
 33
 In Christian, we noted that K.R.S. § 67.710 "indicates that the Fiscal Court has no general authority to nominate or appoint county employees." Christian, 888 F.2d at 414. Rather, the statute provides that "only the Judge Executive may nominate persons for county employment, and that the Fiscal Court must either accept or reject those nominations." Id. Thus, the Christian panel held that summary judgment for the magistrates was properly granted "because Kentucky law did not provide the magistrates with the authority to reappoint" the plaintiff whose term--like the terms of all county employees--expired automatically at the end of the previous executive administration. Id. at 415. For the reasons set forth in Christian, we affirm the dismissal of all claims against the fiscal court.
 
 
 34
 Meade has been sued in his official capacity, which amounts to a suit against the county. Although the county is not liable under section 1983 for all wrongs inflicted by its employees and agents, see Meyers v. City of Cincinnati, 14 F.3d 1115, 1117 (6th Cir.1994), the local government would be responsible for injuries caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy." Monell v. Department of Social Servs., 436 U.S. 658, 694 (1978). Plaintiffs need not prove that they were discharged pursuant to a formally-adopted county policy; "[t]he requirement that a municipality's wrongful actions be a 'policy' is not meant to distinguish isolated incidents from general rules of conduct promulgated by city officials [but to] ... make clear that municipal liability is limited to action for which the municipality is actually responsible." Meyers, 14 F.3d at 1117 (internal quotation marks and citations omitted). A municipality may be liable for "a single decision by municipal policy-makers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Meade is a final policy-maker; his actions may provide a foundation for municipal liability if his decisions are found to violate the constitution. Therefore, whether plaintiffs appeal the dismissal of claims against the fiscal court or the determination that Meade, as judge executive, is a policy-maker whose actions represent official policy, we affirm the district court's decision.
 
 VI.
 
 35
 Finally, the plaintiffs seek a determination that Meade is not entitled to qualified immunity for his actions. "Since application of the doctrine of qualified immunity to a particular defendant is a question of law, this court reviews de novo the district court's disposition." Mumford v. Zieba, 4 F.3d 429, 432 (6th Cir.1993). The district court appropriately denied Meade's motions for absolute and qualified immunity at this preliminary stage.
 
 
 36
 "[G]overnment officials performing discretionary functions enjoy qualified immunity," which "shields them from civil damages liability provided their actions 'could reasonably have been thought consistent with the rights they are alleged to have violated.' " Johnson v. Estate of Laccheo, 935 F.2d 109, 111 (6th Cir.1991) (quoting Anderson v. Creighton, 483 U.S. 635, 638 (1987)). Whether such an official could reasonably have thought his actions to be lawful "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Id. (internal quotation marks and citation omitted). Before the reasonableness of an action is assessed, the facts of the case must be established. "When a court determines whether qualified immunity exists, it must first ask 'whether the plaintiff has asserted a violation of a constitutional right at all,' " and only then proceed to determine whether the right was clearly established. Blair, 76 F.3d at 100 (citation omitted). At this stage in the case, it would be inappropriate to reach the question of qualified immunity. The facts must be further developed before the court can determine whether a violation of Hamilton's or Music's clearly established constitutional rights has occurred.
 
 VII.
 
 37
 We AFFIRM the judgments entered by the district court. Judge Ryan would vacate the judgment dismissing Hamilton's claim and remand for further proceedings as to her claim only.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 This provision states:
 [T]he county judge/executive of any county may appoint a deputy county judge/executive, and a reasonable number of other assistants, secretaries and clerical workers within the office of the county judge/executive as determined by the fiscal court, who shall serve at his pleasure.