NOT RECOMMENDED FOR PUBLICATION
File Name: 12a0716n.06

No. 10-2294

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 03, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| MARSHA BINELLI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL** FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHARTER TOWNSHIP OF FLINT; | ) | EASTERN DISTRICT OF MICHIGAN |
| KARYN MILLER, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    MERRITT and COLE, Circuit Judges; and VARLAN, District Judge.[*]

**MERRITT, Circuit Judge.**  Plaintiff Marsha Binelli appeals the district court's decision to grant summary judgment to Defendants Karyn Miller and the Charter Township of Flint (the Township).  Binelli claims that Miller, the current Township Supervisor, violated Binelli's First Amendment rights by firing her in retaliation for her support of Douglas Carlton, the former Township Supervisor, during the 2008 primary election.  The district court ruled for Miller because it found that she was entitled to qualified immunity and for the Township because Binelli could not establish municipal liability.  We affirm the district court's decision.

---

[*]The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I. Background

Beginning on May 15, 2006, Binelli worked for the Township as a confidential secretary to Supervisor Carlton. In December 2007, Carlton promoted Binelli to deputy supervisor, which, in addition to her previous responsibilities, gave her the authority to sign purchase orders. Miller defeated Carlton in an August 2008 primary vote and, after running unopposed in the general election, was elected the next Township Supervisor. She assumed the office on November 20, 2008.

After Carlton lost the primary vote but while he was still supervisor, the Township enacted Ordinance No. 512-02 on September 8, 2008, to prevent residential neighborhood blight. Carlton selected Binelli to fill the new position of ordinance-enforcement officer. She and the funds for her 2009 salary were transferred from the Supervisor Department to the Building Department. Although she was not officially sworn into the new position until November 19, 2008, the day before Miller assumed office, Binelli began her new duties in September while also maintaining her previous role.

On December 1, 2008, Miller wrote a letter to Binelli informing her that the deputy supervisor position had ended with Carlton's tenure. The letter further stated that Binelli's services as confidential secretary were no longer required. Binelli returned to work the following day because the Township Clerk, Kim Courts, and Treasurer, Sandy Wright, told her that they believed Miller had no authority to fire Binelli from the ordinance-enforcement position. On December 17, 2008, Miller wrote another letter to Binelli informing her that she had been transferred from the Building Department back to the Supervisor Department and that her former positions were no longer available. Binelli has not worked for the Township since December 17, 2008.

On January 9, 2009, Binelli filed a First Amendment political patronage retaliation claim against the Township and Miller in state court. Defendants removed the case to federal court, and, after discovery, the district court granted Defendants' Motion for Summary Judgment on September 30, 2010. Binelli appealed.

## II. Analysis

### A. Standard of Review

All of the rulings which Binelli objects to on appeal were decided at summary judgment, which this court reviews *de novo*. *See Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Granting summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A reviewing court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Qualified Immunity

Binelli argues on appeal that Miller was not entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the absence of a serious factual dispute, a party's entitlement to qualified immunity is a question of law reserved for the judge. *See Poe v. Haydon*, 853 F.2d 418, 424 (6th Cir. 1988) (citing *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987)). The burden is on the plaintiff to prove that this immunity is not appropriate. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006). Typically, a court must ask (1)

whether the official violated any of the plaintiff's constitutional rights and (2) whether the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court, however, has authorized lower courts to answer the second question first. *See Pearson v. Callahan*, 555 U.S. 223, 242 (2009). In this case, the district court only addressed the question of whether the right was clearly established.

For a right to be clearly established, it "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Compliance with this standard does not demand that the plaintiff furnish a case holding the identical action in the identical circumstances unlawful, but it does require the action's unlawfulness to be apparent ahead of time. *See id.* Its illegality must be obvious to an objective, reasonable person. *See Barton v. Norrod*, 106 F.3d 1289, 1293 (6th Cir. 1997). Here, the district court phrased the question as "whether a reasonable official would have understood that transferring Plaintiff from the position of ordinance-enforcement officer to the confidential secretary position would violate Plaintiff's constitutional rights." *Binelli v. Charter Township of Flint*, No. 09-10385, 2010 WL 3906903, at *5 (E.D. Mich. Sept. 30, 2010). It then answered the question in the negative.

### i. What Right Must Be Clearly Established

On appeal, Binelli first objects to the district court's decision to focus on the transfer rather than on her ultimate termination. She suggests that the transfer was merely a pretext so that Miller could fire Binelli. As a result, Binelli presents the question as whether a reasonable official would have understood that firing an employee for her political associations from the position of ordinance-enforcement officer violated that employee's rights. Phrasing the inquiry this way brings it more in

line with the abundant case law protecting non-political officials from termination based on their First Amendment activities.

But the district court's inquiry was correct. First, asking whether the transfer violates Binelli's rights is more faithful to the numerous Supreme Court and Sixth Circuit cases that instruct trial judges to ask whether a right was clearly established at a level of great particularity and detail. *See, e.g., Anderson*, 483 U.S. at 639-40; *Saylor v. Bd. of Educ. of Harlan Cnty. Ky.*, 118 F.3d 507, 515 (6th Cir. 1997). Second, the crucial action for the resolution of this case was the transfer because the constitutionality of the subsequent termination depends on what position Binelli occupied when she was discharged. Binelli does not seriously argue that, if she had been employed within the Supervisor Department, her discharge from that position would have violated her rights. *See Branti v. Finkel*, 445 U.S. 507, 517-18 (1980); *Elrod v. Burns*, 427 U.S. 347, 366-67 (1976); *Blair v. Meade*, 76 F.3d 97, 100-01 (6th Cir. 1996); *Faughender v. City of North Olmstead, Ohio*, 927 F.2d 909, 913-14 (6th Cir. 1991). On the other hand, Miller concedes that, if Binelli had remained in the Building Department, her termination, assuming it was politically motivated, would have been unconstitutional. *See Christian v. Belcher*, 888 F.2d 410, 416 (6th Cir. 1989). The only action that Miller took for which her authority is disputed was the transfer of Binelli from the ordinance-enforcement position back to the confidential secretary/deputy supervisor position. The district court was correct to ask whether a reasonable official would have understood that such a transfer would violate Binelli's rights.

ii. Did Miller's Transfer of Binelli Violate Clearly Established Rights

Binelli, as she must, contends that case law with similar factual circumstances clearly establishes that what Miller did violated her constitutional rights. In *Sowards v. Loudon County., Tennessee*, the Sixth Circuit reversed a grant of summary judgment in favor of a defendant sheriff who fired the plaintiff, a jailor, because she had supported her husband's campaign for sheriff against the defendant. 203 F.3d 426, 440 (6th Cir. 2000). The wrongfulness of the sheriff's action in that case was clearly established because the position of jailor could be analogized to a prison guard, which the Supreme Court has held is a job free from political considerations. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 79 (1990). Binelli does not point to any case holding that a position analogous to confidential secretary/deputy supervisor is apolitical. Furthermore, the sheriff in *Sowards* terminated the jailor outright rather than transferring her to a position where he had the discretion to fire her. The facts in *Sowards* are hardly similar enough to the current situation to "compel" the conclusion that Miller's actions were unconstitutional. *Saylor*, 118 F.3d at 515-16 (quoting *Lassiter v. Ala. A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)). Nor do the other Sixth Circuit cases Binelli cites to in her appellate brief come any closer to clearly establishing that the transfer in this case was illegal.

Without federal case law to the contrary, Miller could reasonably have believed, as the district court found, that her duties as "personnel director of all township employees" encompassed the power to transfer employees within the Township. MICH. COMP. LAWS § 42.10(n). Former supervisor Carlton, the man who hired Binelli as his confidential secretary and deputy supervisor, likewise interpreted his authority to include transferring Township employees. The Township lawyer

under Carlton concurred. With her predecessor's actions as precedent, Miller, or any other reasonable official, could be forgiven for erroneously concluding, if it was erroneous, that she could transfer Binelli back to the Supervisor Department. Once there, Miller could reasonably have believed that she had the right to discharge Binelli because she served only "at the pleasure of the supervisor." MICH. COMP. LAWS § 41.61(2). Having found that Miller acted reasonably and did not violate Binelli's clearly established rights, we, like the district court, decline to address whether there was any constitutional violation at all. *See Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009).

We do note, however, that here the defeated office holder, Carlton, transferred Binelli from a confidential to a non-confidential position outside his office after the election, presumably in order to protect her from discharge under the First Amendment doctrine of *Elrod v. Burns*, 427 U.S. 347 (1976). There is no clearly established law forbidding a newly elected official from making a reciprocal political transfer in order to undo the earlier political transfer. Otherwise, a defeated governmental executive could also defeat the purposes of the *Elrod* doctrine by transferring employees who are his confidential political advisors and supporters to ostensibly non-political positions throughout the government. There is no clearly established law that the protection of the *Elrod* doctrine extends to such transfers.

### C. Municipal Liability

Municipalities can only be liable for individual constitutional violations that are part of a policy, custom, or practice. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Binelli does not point to any Township policy, custom, or practice but, instead, asserts that Miller's actions themselves rise to the level of official policy because the supervisor has "final authority" on

Township employment practices. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

Whether an official has final authority to make government policy is a question of state law and, for

municipal liability to attach, the challenged action must be within the scope of that authority. *See*

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). "When an official's discretionary

decisions are constrained by policies not of that official's making, those policies, rather than the

subordinate's departures from them, are the act of the municipality." *Id.* at 127.

Unquestionably, Miller acted as the final decision maker when she transferred and terminated

Binelli. Final action, however, does not equate with final policy making authority, especially when

there is no evidence that Miller's treatment of Binelli created Township policy. *See Cope v.*

*Heltsley*, No. 98-5253, 178 F.3d 1293 (Table), 1999 WL 232687, at *2 (6th Cir. April 16, 1999).

Even the authority to hire and fire general employees does not necessarily make a defendant the final

policy maker. *See Pembaur*, 475 U.S. at 483 n.12. In this case, Binelli cannot even claim that Miller

possessed such authority because a recent consent decree determined that the Board "is vested with

the sole discretion to hire and fire employees." Consent Judgment in *Joseph v. Charter Township*

*of Flint*, Genesee Cnty. Cir. Ct. Case No. 94-28915-CZ. Miller could have reasonably believed that

she was entitled to transfer employees as the Township's "personnel director" and to fire the deputy

supervisor who served only at her "pleasure," MICH. COMP. LAWS § 41.61(2), but most employment

policy in the Township is set by the Board. Miller's authority to make policy on employment matters

is thoroughly constrained, *see Praprotnik*, 485 U.S. at 127, and her actions here do not give rise to

municipal liability.

We affirm the judgment of the district court.