198 F.3d 205 (6th Cir. 1999)
 Elizabeth Hoard, Administratrix of the Estate of Russell A. Hoard; Thomas Bentley; Vernon Muncy; Nancy Wooton; Joan Gay; Carl Wooton; Norman Couch; Elias Collett; Dean Adams; Stevie Caldwell; Leslie Huff; Martin Muncy; Ronnie Huff; Ronnie Sizemore; Levi Muncy; Betty Baker; Clyde Conway Vance; George Sizemore; and Steve Collins, Plaintiffs-Appellees,
v.
Onzie Sizemore, in his individual capacity as Leslie County Judge/Executive, Defendant-Appellant (97-5540),
Onzie Sizemore, in his official capacity as Leslie County Judge/Executive; Ruie Caldwell, individually and in his official capacity as Magistrate of Leslie County, Kentucky; Billy Sizemore, in his official capacity as Magistrate of Leslie County, Kentucky; James H. Boggs, individually and in his official capacity as Magistrate of Leslie County, Kentucky; William Lewis, individually and in his official capacity as
 Magistrate of Leslie County, Kentucky; Leslie County Fiscal Court; Leslie County, Kentucky, Defendants-Appellants (97-5585).
 Nos. 97-5540, 97-5585
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued: June 10, 1998
Decided and Filed: November 17, 1999
 
 Appeal from the United States District Court for the Eastern District of Kentucky at London, No. 94-00472--Jennifer B. Coffman, District Judge.[Copyrighted Material Omitted]
 Alva A. Hollon, Jr., John O. Hollon, SAMS & HOLLON, Jacksonville, Florida, Kenneth A. Buckle, Hyden, Kentucky, for Appellees.
 Jason E. Williams, Farmer, Kelley, Brown & Williams, London, Kentucky, for the Defendant-Appellant Onzie Sizemore in No. 97-5540.
 Sun S. Choy, LANDRUM & SHOUSE, Louisville, Kentucky, for Defendant Ruie Caldwell in No. 97-5540.
 Allen Button, WILLIAMS & WAGONER, Louisville, Kentucky, for Defendant Billy Sizemore in No. 97-5540.
 William A. Hoskins, III, John W. Walters, David B. Mattingly, JACKSON & KELLY, Lexington, Kentucky, for Appellants in No-97-5585.
 DAUGHTREY, J., delivered the opinion of the court, in which GILMAN, J., joined. BATCHELDER, J. (pp. 222-24), delivered a separate opinion concurring in part and dissenting in part.
 Before: BATCHELDER, DAUGHTREY, and GILMAN, Circuit Judges.
 OPINION
 MARTHA CRAIG DAUGHTREY, Circuit Judge.
 
 
 1
 Before us are two appeals, both related to a § 1983 action in which the plaintiffs alleged that their First Amendment rights were violated when Onzie Sizemore, as the newly elected county judge-executive of Leslie County, Kentucky, intentionally didnot re-nominate them for county employment in retaliation for failing to support his 1993 campaign[1]. There are currently 19 plaintiffs before the court, all former employees of county offices[2].
 
 
 2
 In the first appeal, defendant Onzie Sizemore, in his individual capacity, contends that the district court erred in denying his motion for summary judgment on the basis of qualified immunity. In the second, defendants Leslie County and Leslie County Fiscal Court, along with Sizemore and two county magistrates in their official capacities, contend that if this court finds that Sizemore is entitled to qualified immunity, then the plaintiffs' claims against them must also be dismissed. To support this contention, they argue that because the issues are inextricably intertwined, we should assert pendent appellate jurisdiction over their appeal, even though the appeal on its own would not be reviewable.
 
 
 3
 We conclude that the district court erred in denying Sizemore summary judgment on the basis of qualified immunity with respect to four of the plaintiffs, who fail to state a First Amendment violation because they fall within the Branti v. Finkel exception for political patronage dismissals. Accordingly, the claims of these four plaintiffs against the county and other defendants must be dismissed, because they cannot state a claim against these defendants if there has been no violation of their constitutional rights. However, we cannot exercise jurisdiction at this time over the claims of the remaining 15 plaintiffs, because the district court determined that a genuine issue of material fact remains as to what motivated their constructive discharge. Such a ruling prevents appellate review at this stage of the proceedings, under the Supreme Court's opinion in Johnson v. Jones, 515 U.S. 304 (1995). Consequently, we also have no jurisdiction to consider the appeal of the pendent defendants as to these 15 plaintiffs.
 
 PROCEDURAL AND FACTUAL BACKGROUND
 
 4
 In the May 1993 Leslie County Republican primary, Sizemore defeated the incumbent county judge, C. Allen Muncy.[3] Because there was no opposition from the Democratic party in the November 1993 general election, Sizemore was sworn in as the new county judge in January 1994. Prior to taking this office, Sizemore had completed two four-year terms as a magistrate on the Leslie County Fiscal Court.
 
 
 5
 During the primary campaign, the plaintiffs openly and publicly supported Judge Muncy. According to their testimony, they displayed their support by engagingin activities such as talking to people throughout Leslie County, putting bumper stickers on their vehicles, placing signs in their yards, wearing hats, and attending political rallies. At the end of December 1993, all county employees, including each of the original 22 plaintiffs in this lawsuit, received a memorandum from Sizemore, which Judge Muncy had allowed Sizemore to insert into the employees' final paycheck. The memorandum stated: "It is my understanding that your job in county government will terminate January 3, 1994. Anyone who is presently employed must be renominated and rehired by the new administration. Hopefully, many current employees will be rehired as soon as possible. I invite you all to reapply for county government. I appreciate your contribution to Leslie County."
 
 
 6
 None of the plaintiffs were rehired to work under Sizemore's administration. They filed a civil rights action against Sizemore and each of the four magistrates in their individual capacities, and also against Leslie County, the Leslie County Fiscal Court, and Sizemore and each of the magistrates in their official capacities. In this action, the plaintiffs alleged that their First and Fourteenth Amendment rights were violated by the defendants because they were terminated from their county employment for the exercise of their political beliefs and were not afforded procedural due process. They also argued that their termination violated state laws and alleged that it was an unwritten policy or custom in Leslie County to get rid of the supporters of one's political opponents upon taking office.
 
 
 7
 After protracted discovery, Sizemore, in his individual capacity, and the remaining defendants filed motions for summary judgment, with Sizemore specifically invoking the doctrine of qualified immunity. On March 31, 1997, the district court granted in part and denied in part the summary judgment motions. The court (1) granted the defendants' motions with regard to the plaintiffs' due process and state law claims; (2) granted the magistrates, in their individual capacity, summary judgment with regard to the plaintiffs' First Amendment claims; (3) denied summary judgment with regard to liability of the county by virtue of suit against officials in their official capacity with respect to plaintiffs' First Amendment claims; (4) granted summary judgment with regard to the First Amendment claims of plaintiffs Christy Couch Sexton and Marlene Feltner; (5) denied summary judgment with regard to all remaining plaintiffs' First Amendment claims; and (6) denied Sizemore qualified immunity. Sizemore and the other defendants timely filed separate notices of appeal.
 
 
 8
 The summary judgment record included evidence that it was the custom in Leslie County for the victor of an election to "enjoy the spoils" by terminating all of the employees of the previous administration and hiring back only those the official wanted. In addition, the parties have devoted a fair amount of their appellate briefs to discussing the financial condition of the county when Sizemore took office, which, for reasons discussed below, is not relevant to our analysis at this stage of the litigation.
 
 ANALYSIS
 
 9
 I. Plaintiffs Vernon Muncy, Martin Muncy, Russell Hoard, and Betty Sue Baker and the Branti Exception
 
 A. Jurisdiction
 
 10
 Under the doctrine of qualified immunity, as explained by the Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), government officials engaged in the performance of discretionary functions are generally "shielded from liability [and, indeed, from suit] for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818(citations omitted). The defendant, as the movant in a motion for summary judgment, must show that no genuine issues of material fact remain that would defeat his claim of qualified immunity, and the plaintiff carries the burden to allege and prove that the defendant official violated a clearly established right of which a reasonable person would have known. See Pray v. City of Sandusky, 49 F.3d 1154, 1158 (6th Cir. 1995).
 
 
 11
 In this case, plaintiffs Vernon Muncy, Martin Muncy, Russell Hoard, and Betty Sue Baker allege that their clearly established First Amendment rights were violated when they were constructively discharged on the basis of political affiliation. Sizemore contends that he should be granted qualified immunity with respect to these claims because "party affiliation is an appropriate requirement for the effective performance of the public offices involved" and, therefore, the plaintiffs have failed to assert a violation of their First Amendment rights. Branti v. Finkel, 445 U.S. 507, 518 (1980).
 
 
 12
 As a threshold matter, the plaintiffs argue that we lack jurisdiction to review this question, because the district court's denial of summary judgment on the issue of qualified immunity was based on its conclusion that "there is still a question of whether the positions occupied by those individuals were imbued with the discretionary and/or confidential access to the Judge-Executive so as to warrant a reasonable belief that the exception was applicable." A district court's order denying summary judgment that is based on qualified immunity and turns on an issue of law is immediately appealable as a final judgment under the collateral order doctrine. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Walton v. City of Southfield, 995 F.2d 1331, 1335 (6th Cir. 1993). However, as this court has previously explained, "[u]nder the doctrine of Johnson v. Jones, [515 U.S. 304 (1995),] this court cannot review on interlocutory appeal a district court's determination that a genuine issue of fact exists for trial, see Johnson, 515 U.S. at 319, but we retain jurisdiction over the legal question of qualified immunity, i.e., whether a given set of facts violates clearly established law." Mattox v. City of Forest Park, 183 F.3d 515, 519 (6th Cir. July 13, 1999). We review de novo the district court's denial of qualified immunity. See id.
 
 
 13
 In the present case, the jurisdictional question is not relevant with respect to the first four plaintiffs, because there is no factual dispute, but rather a dispute about how to characterize the undisputed evidence in light of the relevant law. The issue identified by the district court in this case -- "whether the positions occupied by those individuals were imbued with the discretionary and/or confidential access to the Judge-Executive so as to warrant a reasonable belief that the exception [to the rule that employee's cannot be fired on the basis of political affiliation] was applicable" -- is not a factual dispute, as the plaintiff argues. Plaintiff mixes the factual issue of what the job duties of the plaintiffs' positions are with the purely legal question of whether to characterize those duties as political and therefore unprotected by the First Amendment. SeeMumford v. Basinski, 105 F.3d 264, 271 (6th Cir.) ("[T]he unique duties of a particular office holder are typically fact driven. However, the "characterization of the position's general or specific duties as nonpolitical or political is a question of law.") (citing McCloud v. Testa, 97 F.3d 1536, 1546 (6th Cir. 1996)), cert, denied, 118 S. Ct. 298 (1997). Because the court already knows what the job duties are, given the extensive discovery with regard to the duties of each of the four plaintiffs, as well as Sizemore's testimony about what he envisioned the duties to be, we have before us the factual basis necessary for the purely legal determination of whether or not political affiliation is an appropriateconsideration for personnel decisions concerning the plaintiffs' jobs. Although the parties give a different spin on the evidence, the underlying facts -- what the duties of the jobs are as seen by the plaintiffs and by Sizemore -- are not disputed. We therefore conclude that we have jurisdiction to consider the "neat abstract issue[] of law" presented by the appeal of the first four plaintiffs. Johnson, 515 U.S. at 317.
 
 
 14
 B. Whether Plaintiffs Asserted a Constitutional Violation
 
 
 15
 Defendant Sizemore's appeal raises two legal questions, only one of which we need to reach. In determining whether qualified immunity exists, we first ask "whether the plaintiff has asserted a violation of a constitutional right at all." Blair v. Meade, 76 F.3d 97, 100 (6th Cir. 1996) (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Thus, in this case, we must determine whether the facts as alleged by the plaintiffs state a First Amendment claim. See id. "Only after the court makes this determination does it consider whether this right was clearly established," the second question in the qualified immunity analysis. Id.
 
 
 16
 The Supreme Court trilogy of Elrod v. Burns, 427 U.S. 347 (1976), Branti v. Finkel, 445 U.S. 507 (1980), and Rutan v. Republican Party, 497 U.S. 62 (1990), establishes that public employees continue to enjoy First Amendment freedoms of political belief and association except where "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti, 445 U.S. at 518. In Rutan, the Supreme Court explicitly extended this protection beyond the context of firings, to include political patronage in areas such as transfers, promotions, and recalls from layoffs. 497 U.S. at 64. Moreover, it is well-established in this circuit that members of rival factions within the same political party are protected. See McCloud, 97 F.3d at 1546.
 
 
 17
 As this court noted in Blair, the Branti exception was "fleshed out in Faughender v. City of North Olmsted, 927 F.2d 909 (6th Cir. 1991)," which held that the court must examine two things: (1) "the inherent duties of the position in question" and (2) the "'duties that the new holder of that position will perform,'" as envisioned by the newly elected official (the defendant). Blair, 76 F.3d at 100 (citing Faughender, 927 F.2d at 913). "If this examination reveals that the position is inherently political in nature, then political affiliation is an appropriate requirement for the job." Id. Further guidance came from Rice v. Ohio Dept. of Transportation, 14 F.3d 1133, 1142 n.9 (6th Cir. 1994), where the court held that broad responsibilities, not well defined, make it more likely that a job is a policymaking position.
 
 
 18
 In McCloud, the court attempted to organize the growing body of Supreme Court and Sixth Circuit case law into a categorical approach for determining whether a position falls within the Branti exception, specifying the following categories:
 
 
 19
 Category One: positions specifically named in relevant federal, state, county, or municipal law to which discretionary authority with respect to the enforcement of that law or the carrying out of some other policy of political concern is granted;
 
 
 20
 Category Two: positions to which a significant portion of the total discretionary authority available to category one position-holders has been delegated; or positions not named in law, possessing by virtue of the named jurisdiction's pattern or practice the same quantum or type of discretionary authority commonly held by category one positions in other jurisdictions;
 
 
 21
 Category Three: confidential advisers who spent a considerable portion of their time on the job advising category one orcategory two position-holders on how to exercise their statutory or delegated policymaking authority, or other confidential employees who control the lines of communication to category one positions, category two positions, or confidential advisers;
 
 
 22
 Category Four: positions that are part of a group of positions filled by balancing out political party representation, or that are filled by balancing out selections made by different governmental agents or bodies.
 
 
 23
 McCloud, 97 F.3d at 1557.
 
 
 24
 As the next step, therefore, we must review the claims of each of the first four plaintiffs in light of the approaches discussed in Faughender, Rice, Blair, and McCloud.
 
 
 25
 1. County Road Department Foreman/Garbage Coordinator Position
 
 
 26
 Under the Faughender analysis, we first examine the "inherent duties" of the position in question. One way of determining what those duties are is to consider the testimony of a person who has held that position, although such testimony is not decisive. See Smith v. Sushka, 117 F.3d 965, 970 (6th Cir. 1997) ("[A]n employee's prior duties can be used 'as a way to gather evidence that the person's position was one affecting policy.'" (quoting Faughender, 927 F.2d at 915)). Plaintiff Vernon Muncy testified that as road foreman and garbage coordinator, he was responsible for maintaining the roads in Leslie County and supervising all 20-30 employees in the county road and garbage department. The road foreman reports directly to the county judge-executive, to whom he speaks "about every day." Vernon Muncy testified that he decided which roads needed work and what type of work they needed. Along those lines, he maintained contact with the magistrates of the Fiscal Court, who call on him when they want something done in their districts.
 
 
 27
 The second prong of the Faughender analysis requires the court to consider the duties that the new holder of that position will perform. Sizemore testified that he envisioned his newly appointed road foreman, Clarence Napier, as his "liaison out to the public on roads and road problems." Sizemore also testified that the county road budget is roughly a third to a half of the entire county budget. Napier testified that on a typical day, he receives complaints from a number of citizens regarding the condition of roads, which he follows up by inspecting the road and reporting back to the judge. He handles what he considers "small" problems and goes to the judge with big ones. He oversees road projects and supervises the crew. According to magistrate William Lewis, who served as magistrate for four terms, there is a direct relationship between keeping roads maintained and getting reelected.
 
 
 28
 Plaintiff Vernon Muncy's reliance on Judge Muncy's testimony that the road foreman played no role in the design or enforcement of policy and did not serve as an advisor ignores the fact that what is relevant under Faughender is how the new office holder envisions the position. Moreover, plaintiff does not challenge defendant Sizemore's "vision" of the road foreman position, which lends further support to the conclusion that the position as defendant envisions it is inherently political. See Blair, 76 F.3d at 101 (finding support for conclusion that the job was inherently political in the fact that plaintiffs did not challenge the defendant's assertion of how he envisioned the job). In addition, plaintiff Vernon Muncy is Judge Muncy's brother, a fact which only makes it more likely that the position is inherently political (although the relationship alone would be insufficient for this conclusion).
 
 
 29
 In light of the inherent nature of this position, which involves responsibility for carrying out the county judge-executive's road maintenance policy and controlling the lines of communication between the public and the judge executive, as well asthe nature of the job as envisioned by the new officeholder, we conclude that the position is inherently political. The evidence in the record shows that, although the road foreman does not have significant discretionary authority as to policy matters, he serves as the judge's "alter-ego" in the community with respect to road conditions. See Blair, 76 F.3d at 101 (finding bookkeeper/assistant to chief financial officer to be a position for which political affiliation is an appropriate consideration because position was nothing more than "alter ego" of executive position).
 
 
 30
 In Blair, the court noted that although many of the duties of the position at issue were ministerial, the nature of the position involved elements of confidentiality and trust, and the position was "only one level removed from an executive position." Id. The position of road foreman is also one level removed from the executive and by its nature requires the holder of the position to report important information to the executive and to represent the executive in the community so far as county roads are concerned. See Selch v. Letts, 5 F.3d 1040, 1044-47 (7th Cir. 1993) (holding that political affiliation was an appropriate hiring consideration where plaintiff oversaw maintenance and repair program for state highways, buildings and grounds, and equipment because, inter alia, plaintiff was a critical and highly visible representative of the state administration) (cited with approval in Rice, 14 F.3d at 1040) (holding that political affiliation was an appropriate consideration because deputy directors and administrative assistants were responsible for overseeing the expenditure of enormous amounts of tax money and there is ample room for political disagreement on how resources should be allocated)). In Selch, the Seventh Circuit concluded:
 
 
 31
 There is significant evidence in political life that the failure to properly provide public services, such as snow removal from highways, will adversely impact on the chief executive of a state or a local government charged with providing such services. In the case before us, the successful implementation of policy in the area of highway maintenance would likely have a substantial effect on the public's perception of the Democratic administration. ...
 
 
 32
 Id. at 1046-47 (citation omitted). In a case specifically involving the position of a county road foreman, another court found that political loyalty to the county judge was necessary for the effective performance of the job at least in part because "[i]n many ways, the foreman is the eyes and ears of the Judge so far as the condition of county roads is concerned." Wagner v. Hawkins, 634 F. Supp. 751, 754 (W.D. Ark. 1986) (emphasizing also that the road foreman exerted influence on important policy decisions). The county road foreman, as the eyes and ears of the judge, clearly controls the lines of communication to and from the judge, a political actor, and therefore, occupies an inherently political position. See Faughender, 927 F.2d at 914 (holding that a position that controls the lines of communication of a political actor must be political).
 
 
 33
 In any event, the road foreman position falls squarely into the first of the four McCloud categories. Kentucky state law specifically provides for a county road supervisor who "has the general charge of all county roads and bridges within his county" and must see that "county roads and bridges are improved and maintained as provided by law." KRS §179.070 (1),(2). Road maintenance is a "policy of political concern," and the record shows that the road foreman has some discretionary authority with respect to carrying out this policy.
 
 
 34
 2. Assistant Road Foreman/Supervisor Position
 
 
 35
 As assistant road foreman, plaintiff Martin Muncy testified that he worked under foreman Vernon Muncy, carrying out the tasks ordered by the foreman. He was responsible for making sure that workwas being done properly and for checking to see which roads needed work. He typically reported to the foreman, but would report to the county judge-executive if the foreman was unavailable. Clayton Baker, the assistant road foreman appointed by Sizemore, testified that when the road foreman is off, the assistant hands down instructions, and when the foreman is there, the assistant drives a gravel truck. Sizemore urges the court to conclude that because the assistant road foreman sometimes serves the same functions as the road foreman, his position is also necessarily inherently political.
 
 
 36
 Although the assistant road foreman is twice removed from the executive, and his job is largely ministerial, defendant Sizemore is correct that this position is inherently political for essentially the same reasons the road foreman's position is. Given the central importance of road maintenance in a rural county and the fact that the assistant road foreman may be called upon to serve as the executive's liaison with the public as far as road conditions are concerned, the position can only be seen as inherently political. As in Blair, where the court found that both the finance officer and assistant finance officer fell within the Branti exception because the assistant performed many of the same tasks as the finance officer, in this case the assistant road foreman falls within the Branti exception because the nature of his job is to serve as the road foreman when the road foreman is unavailable. See Blair, 76 F.3d at 101. Furthermore, plaintiff Martin Muncy is the first cousin of former judge Muncy, which lends support to the conclusion that the position is inherently political.
 
 
 37
 The same analysis leads to the conclusion that the assistant road foreman position falls within McCloud category two. When the road foreman, who is in a category one position, is absent, the assistant is delegated the authority available to the category one position-holder. See McCloud, 97 F.3d at 1557.
 
 
 38
 3. Garage Supervisor/Purchasing Agent Position
 
 
 39
 Plaintiff Russell Hoard served as both garage supervisor and purchasing agent. According to him, the garage supervisor in Leslie County comes under the authority of the road department. He takes complaints over the phone regarding road maintenance and conditions and discusses these complaints with the county judge. The county judge tells the supervisor which roads need to be fixed, how he wants it done, what parts need to be bought, and what equipment needs to be fixed. The garage supervisor is responsible for supervising the employees at the road department garage, which consists of telling them what to do and relaying messages from the county judge and the road foreman. The garage supervisor also measures fuel to see if more gas or diesel is needed and keeps the garage clean. The "purchasing agent" component of this position consists of shopping around for and ordering the parts that the garage mechanic indicates are needed.
 
 
 40
 Plaintiff Hoard argues that the garage supervisor has no discretion either in the design or enforcement of policy, nor does he have the authority to answer the complaints he receives by determining whether or not a road was to be fixed, and if so when it is to be repaired. As garage supervisor, Hoard says, he simply answered the phone, received complaints, and took notes. According to Hoard, this position is "nothing more that a supervisor with a glorified title . . . performing tasks over which he . . . has no discretion, or no discretion of political significance."
 
 
 41
 Sizemore concedes that the position is hard to "pigeon hole" into a McCloud category, but he argues that the position is inherently political because it controls the lines of communication between the public and the county judge and between the county judge and the garage employees. Judge Muncy's testimony in this instance supports Sizemore's position. He testifiedthat the position of garage supervisor was important from a political standpoint in that the position involves interacting with citizens and keeping them from getting "any madder than they already are." The defendant argues that these facts show that "plaintiff was directly involved in the highly political process of responding to complaints regarding road conditions."
 
 
 42
 Even if responding to citizens' complaints over the phone and supervising employees in the garage were not alone sufficient for the conclusion that this job is inherently political, the fact that the position involves a broad range of responsibilities leads to the conclusion that it is political. See Rice, 14 F.3d at 1142 n.9 (holding that broad responsibilities, not well defined, make it more likely that a job is a policymaking position). For example, in Blair, we noted that the positions at issue were somewhat amorphous in nature and included a fairly broad range of responsibilities. Citing Rice, we reasoned that where there appears to be no strict division of labor necessary for the orderly operation of an office, and the employees' duties may therefore vary from one administration to the next, the court should refrain from restricting a new administration's ability to fire such employees because this would hamper the new administration's ability to implement its policies. See Blair, 76 F.3d at 101. Defendant Sizemore has apparently decided that he does not need anyone to serve as garage supervisor/purchasing agent. This court should not hamper his ability to implement his policy as he sees fit by holding him liable for failing to rehire plaintiff Hoard.
 
 4. Senior Citizens Director
 
 43
 Under the Faughender analysis, this position is clearly political in nature and not protected by the First Amendment. As envisioned by Sizemore, the director has discretion in the appropriation of money under the senior citizens program budget. Further, the director prepares and submits budgetary information to both the county and state agencies which help to fund the program, and Sizemore consults with and seeks advice from the director concerning the operation of the centers. Sizemore testified that the senior citizens director supervises the daily operation of the two senior citizens homes, including scheduling, ordering supplies and handling complaints, and also supervises every employee of those facilities. Any policy Sizemore wishes to implement regarding the operation of these centers must be discussed with and channeled through the director, and the director communicates with the public concerning the policies or activities of the senior citizens program. Finally, Sizemore testified that he was in almost daily contact with the director concerning the operations of the senior citizens program, discussing confidential matters such as personnel decisions and prioritizing programs.
 
 
 44
 This senior citizens director has discretionary authority with regard to the implementation of policy and appropriation of funds within the program's budget, serves as the judge's representative to the public on the issue of senior citizens, and advises the judge on policy issues. Under either Faughender's "inherently political" analysis, or McCloud's categorical approach (this position would fall under either of the first two categories), political affiliation is an appropriate consideration for this position.
 
 
 45
 Based on the above analysis, the defendant should have been granted summary judgment on the issue of qualified immunity with respect to all four plaintiffs involved in this part of the appeal: Vernon Muncy, Martin Muncy, Russell Hoard, and Betty Sue Baker. Moreover, because the court has concluded that the jobs of the plaintiffs are inherently political as a matter of law, it is unnecessary for the court to proceed to the second legal question -- whether it was clearly established, when defendant Sizemore made his personnel decisions, that political affiliation was notan appropriate requirement for the effective performance of the job duties of these four plaintiffs' positions.
 
 
 46
 II. The Court's Jurisdiction With Respect to the Remaining 15 Plaintiffs
 
 
 47
 With respect to the remaining 15 plaintiffs, defendant Sizemore contends, citing Pray v. City of Sandusky, 49 F.3d 1154, 1158 (6th Cir. 1995), that even though it was clearly established that plaintiffs' positions fell outside the Branti exception, a reasonable official in Sizemore's position could disagree that his conduct in failing to re-nominate plaintiffs violated clearly established law. According to Sizemore, Pray requires the court to analyze the reasonableness of the belief that a defendant's conduct was lawful in a fact-specific manner in light of clearly established law and the information defendant possessed. Sizemore insists that he is not requesting that the court resolve the factual dispute underlying the constitutional claim, but instead is requesting the court to decide, in light of the undisputed information that he possessed, whether a reasonable public official could have believed his actions were lawful. In support of this argument, he cites Dolihite v. Maughon, 74 F.3d 1027, 1033-35 n.3 (11th Cir. 1996). Specifically, he argues that his decision was objectively reasonable in light of the dire financial circumstances of the county and the recommendation by the Department of Local Government that he lay off all non-essential personnel. According to Sizemore's analysis, because it is undisputed that this was the information in front of him when he made his personnel decisions, we should find as a matter of law that his actions were objectively reasonable, because an official may reasonably base his employment decisions on financial considerations.
 
 
 48
 In making this argument, Sizemore would have us extend the reach of Pray, a Fourth Amendment case in which the constitutional claim does not require proof of defendant's motive, to a case such as the present one, where the constitutional claim itself is based on defendant's unconstitutional motive. In a Fourth Amendment search and seizure case, the qualified immunity question is whether the officer's behavior was "reasonable," i.e., amounted to probable cause or reasonable suspicion, given the officer's understanding of the factual circumstances, even if his understanding was mistaken. See Pray, 49 F.3d at 1158 (holding that officials are "entitled to qualified immunity [when] their decision was reasonable even if mistaken" (emphasis in original)). By contrast, in a motive-based constitutional claim, specifically a political patronage claim, the qualified immunity question is whether a reasonable official could conclude that the plaintiff was not protected by the First Amendment, i.e., that the plaintiffs' position was inherently political under Branti. See Cope v. Heltsley, 128 F.3d 452, 459-60 (6th Cir. 1997) (applying Pray analysis to the question of whether a reasonable official "could have believed" that the positions at issue were such that "the law entitled her to take political compatibility into account when deciding whom to retain").
 
 
 49
 In Pray, although we said that the defendant was immune if his decision was reasonable even if mistaken, we refused to grant the defendant summary judgment because "there [were] factual disputes involving an issue on which the question of immunity turns, 'such that it cannot be determined before trial whether the defendant did acts that violate[d] clearly established rights.'" Pray, 49 F.3d at 1161 (quoting Poe v. Haydon, 853 F.2d 418, 426 (6th Cir. 1988)). The factual dispute identified in Pray involved the circumstances at the time that the police officers made their decision to use force when searching plaintiffs' residence. Defendant Sizemore argues that because this court knows what circumstances were before him when he decided to discharge the plaintiffs, summary judgment is proper because his decision is reasonable. What he fails to understand is that the issue of whether it wasreasonable under the facts to exercise force under the Fourth Amendment is a very different type of inquiry from whether it was reasonable to rely on financial information in firing someone, because the latter question necessarily turns on an issue of fact: whether defendant was motivated by budgetary concerns or by the political affiliation of the plaintiffs.
 
 
 50
 Defendant Sizemore concedes that the law was clearly established that these 15 plaintiffs were protected under the Branti analysis but attempts to extend Pray's "reasonableness" analysis to the factual circumstances surrounding defendant's motivation. We conclude that, under prior circuit precedent, the result would amount to an improper extension of Pray and, moreover, that it was implicitly rejected by the Supreme Court's recent opinion in Crawford-El v. Britton 523 U.S. 574, 118 S. Ct. 1584, 140 L.Ed. 759 (1998).
 
 
 51
 Here, the district court held that a genuine issue of material fact exists as to whether political affiliation motivated the defendant. As we have previously suggested, Johnson v Jones deprives us of jurisdiction to determine that factual question. See Blair, 76 F.3d at 100 n. 2. Moreover, we noted in Cope that where the district court holds that there is a genuine issue of material fact as to defendant's motivation, and given the procedural posture of the case as an appeal from the district court's denial of summary judgment, as the reviewing court we must assume for the purpose of considering the qualified immunity question that the motivation issue would be resolved in favor of the plaintiffs if submitted to a jury. See Cope, 128 F.3d at 456. In that case, we ultimately found against the plaintiffs because they failed to establish a violation of clearly established law. But according to the analysis in Cope, had we found for the plaintiffs on that issue, the question of motivation would have been an issue for the jury, and we would have affirmed the district court's denial of summary judgment. We could not have proceeded to ask whether the defendant might reasonably have acted on a proper basis in light of the information in front of her when she made her personnel decision, as defendant in this case proposes. In fact, although Cope did not address the jurisdictional issue, it is clear after Johnson and Blair that we do not have jurisdiction to consider the purely factual issue of motivation.
 
 
 52
 It appears to us that defendant's argument is an attempt to transform the factual issue of motivation into the legal question of objective reasonableness. Such an approach would immunize all defendants in cases involving motive-based constitutional torts, so long as they could point to objective evidence showing that a reasonable official could have acted on legitimate grounds. This is exactly the approach suggested by Justice Scalia's dissent and rejected by Justice Stevens's plurality opinion in Crawford-El, 118 S. Ct. at 1594 ("[T]he policy concerns underlying Harlow do not support Justice Scalia's unprecedented proposal to immunize all officials whose conduct is 'objectively valid,' regardless of improper intent.") In Crawford-El, the Court rejected the District of Columbia Circuit's requirement that a plaintiff offer clear and convincing evidence of a defendant's improper motive in response to defendant's motion for summary judgment on the issue of qualified immunity, where unconstitutional motive is an element of plaintiff's affirmative case[4]. Id. at 1594-95. In rejecting this higher standard, the Court clarified that the purely factual question of improper intent is separate from the "essentially legal" qualified immunity question whether the official's allegedconduct violated clearly established law. Id. at 1592.
 
 
 53
 In his dissent in Crawford-El, Justice Rehnquist lamented what he considered the Court's failure to explicitly address one of the questions presented by the defendant, which is the very same question presented in this appeal: "In a First Amendment retaliation case against a government official, is the official entitled to qualified immunity if she asserts a legitimate justification for her allegedly retaliatory act and that justification would have been a reasonable basis for the act, even if evidence -- no matter how strong -- shows the official's actual reason for the act was unconstitutional?" Id. at 1598-99. We conclude that the Court did answer this question, if only implicitly: First, it clearly rejected both Justice Rehnquist's suggestion, which would require the plaintiff to establish that the defendant's proffered reason for his conduct is pretextual, and also Justice Scalia's suggestion that would grant immunity once the trial court finds that the asserted grounds for the official action were objectively valid. Second, in reviewing the procedural safeguards that keep plaintiffs from making unsubstantiated attacks on a defendant's motivation, the Court noted that the plaintiff, in response to a defendant's summary judgment motion, must "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Id. at 1598 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)).
 
 
 54
 Given the Crawford-El court's rejection of the dissents' alternative constructions, its policy against immunizing officials based solely on their assertion of a valid reason for their actions, and its reliance on the traditional analysis of a summary judgment motion, the application of the Court's holding to the present case, as it was presented to the district court, is clear. As long as plaintiffs produced evidence that could support a finding that Sizemore discharged them on the basis of their political affiliation, the district court was obligated under Crawford-El to deny Sizemore's motion for summary judgment. Indeed, this is precisely the basis upon which the district court denied Sizemore's motion, holding that "[w]hether the plaintiffs' constitutionally protected activities prompted the defendants' actions presents an issue of fact."
 
 
 55
 The district court's finding that there is a factual dispute as to Sizemore's motivation, in turn, deprives this court of appellate jurisdiction, as explicitly instructed by the Supreme Court in Johnson. Although the Supreme Court clarified Johnson in Behrens v. Pelletier, 516 U.S. 299 (1996), by stating that "[d]enial of summary judgment often includes a determination that there are controverted issues of material fact, see Fed. Rule Civ. Proc. 56, and Johnson surely does not mean that every such denial of summary judgment is non-appealable," 516 U.S. 312-13 (emphasis in original), that statement is not applicable to the present case, despite the dissent's argument to the contrary. In Behrens, the Supreme Court reaffirmed its previous holding in Johnson that appellate courts do not have jurisdiction to review "determinations of evidentiary sufficiency. . . if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred," but instead only have jurisdiction over "summary judgment determinations... [that] resolve a dispute concerning an 'abstract issu[e] of law' relating to qualified immunity... typically, the issue of whether the federal right allegedly infringed was 'clearly established. . . ." 516 U.S. at 313 (internal citations omitted).
 
 
 56
 The Court held in Behrens, as it did in the Johnsonopinion itself, that the legal issue contained in a district court's denial of summary judgment is not insulated from review simply because the districtcourt states in a conclusory fashion that "material issues of fact remain." Behrens, 516 U.S. at 312 (internal brackets omitted); accord Johnson, 515 U.S. at 319. If a district court does not adequately explain its reasons for denying a motion for summary judgment on the basis of qualified immunity and instead has stated conclusorily that there are material disputes of fact remaining, "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the non-moving party, likely assumed." Behrens, 516 U.S. at 313 (quoting Johnson, 515 U.S. at 319). The purpose of that review of the factual record is to determine whether the district court's holding that a given set of facts violates clearly established law is correct, not to determine whether the district court properly concluded that an issue of fact is "genuine," as the latter determination is not reviewable. See Johnson, 515 U.S. at 319. The distinction between the two, of course, is the difference between a legal question and a factual question. In any event, the problem discussed in Behrens and Johnson -- of district courts' summarily denying summary judgment motions and failing to provide a sufficient explanation of the facts to which it applied the law -- is not present in the case at bar. The district court clearly stated the fact that it believed to be in dispute - Sizemore's motivation, and the parties agree that if Judge Sizemore's termination of the fifteen plaintiffs at issue was motivated by their political affiliation, those facts violate clearly established law.
 
 
 57
 In sum, there is no "abstract issue of law" to be reviewed in this case. As we have explained, Sizemore's attempt to transform a factual question about his motivation into a legal question about the reasonableness of the discharges is without merit. The question of motivation is factual in nature, and we have no jurisdiction to consider the sufficiency of plaintiff's evidence regarding Sizemore's motivation in discharging them. We therefore conclude that we do not have jurisdiction over defendant Sizemore's appeal of the denial of summary judgment as to the claims of these 15 plaintiffs[5].
 
 III. Pendent Appellate Jurisdiction
 
 58
 The remaining defendants, Leslie County, Leslie County Fiscal Court, Leslie County Judge-Executive Onzie Sizemore in his official capacity, and the Leslie County magistrates in their official capacities, contend that although they cannot independently pursue an interlocutory appeal, we should assert pendent appellate jurisdiction over their appeal because the issues in their appeal and those raised by Sizemore in his individual capacity are inextricably intertwined.
 
 
 59
 The Supreme Court recognized pendent appellate jurisdiction in Swint v. Chambers County Comm'n, 514 U.S. 35 (1995), in which it held that an issue which could not be raised independently on interlocutory appeal could be considered along with the issue of qualified immunity, which was properly before the court, if the two appeals were "inextricably intertwined." Id. at 51. This jurisdiction is discretionary, but it has been exercised by several courts of appeals, including this one. See, e.g., Brennan v. Township of Northville, 78 F.3d 1152, 1157-58 (6th Cir. 1996); Dolihite, 74 F.3d at 1035 n.3; Kincade v. City of Blue Springs, 64 F.3d 389, 394-95 (8th Cir. 1995); Moore v. City of Wynnewood, 57 F.3d 924, 929-31 (10th Cir. 1995); Kaluczky v. City of White Plains, 57 F.3d 202, 206-07 (2nd Cir. 1995). In Brennan, we held that pendent appellate jurisdiction is proper when the appellate court's finding on the qualified immunity issue "necessarily and unavoidably" resolves the pendent claim. Brennan, 78 F.3d at 1158 (citing Moore, 57 F.3d at 929-30). For the purpose of considering whether, in light of its resolution of the qualified immunity issues, we can and should assert pendent appellate jurisdiction in this case, it is necessary to place the plaintiffs' claims into two categories: (1) the claims of the four plaintiffs who fall within the Branti exception and therefore fail to assert a constitutional violation, and (2) the claims of the 15 plaintiffs over which this court has no jurisdiction because there remains an issue of fact as to defendant Sizemore's motivation.
 
 
 60
 The defendants' appeal as to the Branti plaintiffs presents "the quintessential case for application of pendent jurisdiction," calling for an"exercise [of] our discretion to do so in the interest of judicial economy." Brennan, 78 F.3d at 1158 (asserting jurisdiction over plaintiff's underlying constitutional claims when considering appeal of police officers sued in their individual capacity, and noting that the court could have asserted jurisdiction over the an appeal by the city had the city pursued one). The defendants' appeal of the four plaintiffs' claims in this case is "inextricably intertwined" with that of Sizemore because the resolution of Sizemore's appeal necessarily disposes of this pendent action against the city and its officials. A city or county and its leaders may not be held liable when there has been no constitutional violation by one of the city or county's employees. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Hinton v. City of Elywood, 997 F.2d 774, 782 (10th Cir. 1993). Hence, having determined that Sizemore is entitled to qualified immunity with respect to the claims of plaintiffs Vernon Muncy, Martin Muncy, Russell Hoard, and Betty Sue Baker because these plaintiffs failed to assert a constitutional violation, we necessarily decide the claims of these plaintiffs againstthe county and its officials in their official capacity. We therefore hold that the claims of these four plaintiffs against the "pendent" defendants must be dismissed, because the plaintiffs' failure to establish a constitutional violation disposes of any liability on the part of these defendants.
 
 
 61
 However, having concluded that we do not have jurisdiction to consider Sizemore's appeal of the district court's denial of his motion for summary judgment as to the final 15 plaintiffs, because there are genuine issues of material fact as to his motivation for discharging them, we cannot assert pendent appellate jurisdiction over the appeal of the remaining defendants concerning the claims of these 15 plaintiffs.
 
 CONCLUSION
 
 62
 For the reasons set out above, we REVERSE the district court's denial of summary judgment both as to Sizemore in his individual capacity on the basis of qualified immunity and also as to the pendent defendants on the merits, with respect to the claims of Vernon Muncy, Martin Muncy, Russell Hoard, and Betty Sue Baker. With respect to the claims of the remaining 15 plaintiffs, we conclude that we are without jurisdiction over both the district court's denial of summary judgment to Sizemore in his individual capacity and the pendent defendants' appeal on the merits, and we therefore DISMISS the second appeal and REMAND the case for further proceedings.
 
 
 
 Notes:
 
 
 [1]
 The district court exercised jurisdiction based on 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.
 
 
 [2]
 The amended complaint involved 22 plaintiffs: Vernon Muncy, road foreman; Martin Muncy, assistant road foreman; Russell A. Hoard, purchasing agent and garage supervisor; Betty Sue Baker, director of senior citizens program; Thomas Bentley, general laborer; Nancy Wooten, dispatcher; Joan Gay, secretary for senior citizens program; Marlene Feltner, director of emergency services; Carl Wooten, mechanic; Clyde Conway Vance, general laborer; Norman Couch, general laborer; Elias Collett, truck driver; Dean Adams, truck driver; Stevie Caldwell, shot foreman and truck driver; Leslie Huff, carpenter and general laborer; Lowell Thomas, Jr., mechanic; Christy Couch Sexton, secretary for judge executive; Ronnie Sizemore, welder and general laborer; Ronnie Huff, truck driver, carpenter and general laborer; Levi Muncy, truck driver; George Sizemore, heavy equipment operator; Steve Collins, welder. This appeal involves only 19 of the original 22 plaintiffs because the district court granted defendant Onzie Sizemore summary judgment on the basis of qualified immunity with respect to two of the original plaintiffs, Christy Couch Sexton and Marlene Feltner, and the district court granted plaintiff Lowell Thomas's motion to voluntarily dismiss his complaint.
 
 
 [3]
 Because "Muncy" is also a name shared by several of the plaintiffs, we will refer to the former county judge-executive as Judge Muncy and to the Muncy plaintiffs by their first and last names.
 
 
 [4]
 The Supreme Court noted that the Court of Appeals' evidentiary requirement and consequently the high court's opinion applied to "a wide array of different federal claims for which an official's motive is a necessary element," including "termination of employment based on political affiliation in violation of the First Amendment." Crawford-El, 118 S. Ct. at 1590.
 
 
 [5]
 Even if the court were to have jurisdiction over that issue, as the dissent argues, Judge Sizemore has explicitly stated that he is not asking the court to decide it. ("For purposes of this appeal, Judge Sizemore is not requesting the Court to review the 'evidentiary' sufficiency' of whether a genuine issue of material fact exists." Instead, "[i]t is Judge Sizemore's contention on appeal that even though it was clearly established that Plaintiffs' positions fell outside the Branti exception, a reasonable official in Judge Sizemore's position could disagree that his conduct in failing to renominate Plaintiffs violated clearly established law.")
 Furthermore, assuming again that this court had jurisdiction to review the district court's decision regarding the sufficiency of plaintiff's evidence regarding Sizemore's motivation, the plaintiffs have produced sufficient evidence of political motivation to create a genuine issue of disputed fact. The plaintiffs offer the deposition testimony of Billy Sizemore, one of the defendants in this case, whose response to the question, "Why was it necessary for the County to terminate all the County workers as of December 31, 1993?" was, "You sort of put your own people in when you go in office, I guess." In response to the following question, "Do you know of any legitimate reason why it would be necessary to terminate all of the employment within Leslie County at the end of a term or at the end of an Administration?" Sizemore said "No." The plaintiffs also offer evidence that the county's financial condition was not as dire as the defendants represent it to have been, along with evidence that Judge Sizemore's staff may have misled the financial analyst evaluating the county's financial condition by providing duplicative copies of bills the county owed, which the financial analyst double counted, and by presenting bills to the analyst as though they had to be paid, when some of them were not necessary to pay (such as a bill for dues for an organization that the county was not necessarily obligated to pay). The plaintiffs also note that after Judge Sizemore took office, he incurred one million dollars in debt for the county for a black-topping project, which one defendant, Billy Sizemore, said he could not understand the county assuming if it faced the severe financial problems Judge Sizemore alleged. The evidence of the validity of the county's alleged financial crisis is offered to show that Judge Sizemore's stated motivation is pretextual.
 Proofing a nebulous fact such as motivation is difficult, and although the plaintiff's evidence is not overwhelming, it presents reasonable doubt about Judge Sizemore's motivation. In any event, despite the dissent's argument to the contrary, plaintiffs have produced more than a "shred" of evidence, and certainly have produced as much, if not more, evidence than that presented by Jones, the civil rights plaintiff in the Johnson case, that the three officers moving for summary judgment had knowingly stood by while another officer beat him.
 
 
 CONCURRING IN PART, DISSENTING IN PART
 
 63
 ALICE M. BATCHELDER, Circuit Judge.
 
 
 64
 I concur in all of the reasoning and most of the result of this opinion. I must respectfully dissent from the conclusion reached in Part II, however, because in my view, the reasoning of the majority opinion and the record in this case require reversal of the district court's denial of summary judgment to defendant Sizemore on the claims of the 15 plaintiffs whose jobs do not fall within the Branti exception.
 
 
 65
 The majority opinion quite rightly says, "As long as plaintiffs produce evidence that could support a finding that Sizemore discharged them on the basis of their political affiliation, the district court was obligated under Crawford-El to deny Sizemore's motion for summary judgment." This is, of course, precisely the point. If the plaintiffs had presented any such evidence, they would have been entitled to go to trial. But they did not. The plaintiffs claim that their discharges and failures to obtain rehire were politically motivated, but the verified complaint contains no facts to support plaintiffs' allegations, and they have presented not one shred of evidence of political motivation in their opposition to the motion for summary judgment. The complaint merely lists the positions in which each of the plaintiffs had been employed, recounts the fact of the election, states that defendant Onzie Sizemore notified the plaintiffs that their employment was being terminated as of the end of Judge Muncy's term, states that "Onzie Sizemore[] approved a list of new employees, which included replacement employees for the plaintiff's [sic] positions," and states that "[t]he plaintiff [sic] were all discharged (or not rehired) in retaliation for their failure or refusal to support the defendant, Onzie Sizemore . . . ."[1] Not a single deposition in the record contains a factual allegation that, if proved, would demonstrate that defendant Sizemore terminated and failed to rehire these 15 plaintiffs because of their support for Judge Muncy. Not a single deposition contains a factual allegation that a Sizemore supporter had been hired to fill the position of any of these 15 plaintiffs. Indeed, the record contains no evidence that these plaintiffs were replaced at all. The record on summaryjudgment contains only the fact that these plaintiffs supported Judge Muncy, the fact that they were not rehired after termination, and a few unsupported opinions[2] that there was a causal connection between those two facts.
 
 
 66
 It is undisputed that all of these plaintiffs, as well as all other county employees, received termination notices advising them that it was defendant Sizemore's understanding that their employment terminated at the conclusion of Judge Muncy's term.[3] While Judge Muncy, whom defendant Sizemore defeated, testified that it was the custom to terminate such employees at the conclusion of the office term of the county judge who appointed them, and that he, Muncy, had followed that custom and had done so for political reasons, there was no evidence presented that Sizemore had issued the termination notices for political reasons. Not one of those 15 plaintiffs presented any direct evidence that Sizemore either terminated his employment or refused to rehire him for political reasons. The only circumstantial evidence of such a motivation was that these employees had supported Judge Muncy for re-election. They--like all the other county employees--were terminated at the end of Muncy's term, and they were not rehired.
 
 
 67
 Defendant Sizemore, however, presented significant uncontroverted evidence that: at the end of Judge Muncy's term, the county had some 50 to 60 employees, all of whom Sizemore terminated; Sizemore hired approximately 39 employees at the beginning of his term; of those 39, only three were new employees,[4] all the others having been employed by the Muncy administration; and at least some of those employees Sizemore hired back had been supporters of Judge Muncy in the immediately preceding election.[5] Further, the record evidence is undisputed that the list of county employees at the end of 1995--after this lawsuit was filed--was essentially identical to the list of employees hired at the beginning of defendant Sizemore's term; thus, it is clear that Sizemore did not simply wait awhile and then hire new people to replace these plaintiffs.
 
 
 68
 Where the plaintiffs have presented actual evidence supporting their factual assertions, and where that evidence creates a genuine issue of fact material to the issues, we must, for purposes of the defendant's motion for summary judgment, take the plaintiffs' version of the facts to be true. But not even Johnson v. Jones, 515 U.S. 304 (1995), requires us simply to accept the district court's bald statement that "whether the plaintiffs' constitutionally protected activities prompted the defendants' actions presents an issue of fact," when the district court did not identify any charged conduct that it deemed sufficiently supported in the record to create such an issue of fact. See Behrens v. Pelletier, 516 U.S. 299,313 (1996). As this court reiterated in Turner v. Scott, 119 F.3d 425, 430 (6th Cir. 1997), "summary judgment rulings must be based on admissible evidence." In Turner, we concluded that the district court's belief that there was a genuine issue of material fact did not prevent appellate review of the denial of summary judgment because the evidence, viewed in the light most favorable to the plaintiff, did not establish even a prima facie case against the defendant officer, and the defendant thus was entitled to judgment as a matter of law. See id. at 428.
 
 
 69
 The issue before us, as the majority opinion points out, is neither whether the county was in fact in dire financial straits (although there is considerable evidence that it was and little evidence that it was not), nor whether a reasonable official in defendant Sizemore's position could have believed that he could refuse to rehire those 15 ex-employees without violating their First Amendment rights. The issue here is whether the plaintiffs presented any evidence that Sizemore refused to rehire them because they had supported Judge Muncy. Citing Behrens, the majority opinion says that when the district court denies qualified immunity at the summary judgment stage with a conclusory statement that genuine issues of material fact remain,
 
 
 70
 [t]he purpose of [appellate] review of the factual record is to determine whether the district court's holding that a given set of facts violates clearly established law is correct, not to determine whether the district court properly concluded that an issue of fact is "genuine," as the latter determination is not reviewable. The distinction between the two, of course, is the difference between a legal question and a factual question. In any event, the problem discussed in Behrens and Johnson -- of district courts' [sic] summarily denying summary judgment motions and failing to provide a sufficient explanation of the facts to which it applied the law -- is not present in the case at bar. The district court clearly stated the fact that it believed to be in dispute -- Sizemore's motivation, and the parties agree that if Judge Sizemore's termination of the fifteen plaintiffs at issue was motivated by their political affiliation, those facts violate clearly established law.
 
 
 71
 (citation omitted). Hence, the majority concludes, we have no jurisdiction over this appeal.
 
 
 72
 But the district court's simply stating the fact that it believed to be in issue cannot put that fact in issue; there must be some evidence to support the plaintiffs' factual allegations. And a determination that the record contains no such evidence is not a determination that the issue of fact is or is not genuine; it is a determination that there is no issue of fact at all. If the review of the factual record demonstrates that there is no evidence to support the plaintiffs' claim, then it is immaterial whether that set of facts, if it existed, would violate clearly established law. Here, the plaintiffs have presented no facts tending to demonstrate Sizemore's motivation, which is the fact the district court believed was in dispute.
 
 
 73
 As the majority points out, Crawford-El requires that where the defendant moves for summary judgment in a First Amendment case such as this, it is the plaintiff's burden to "identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." In my view, the record here is devoid of any evidence at all relative to defendant Sizemore's motivations with regard these 15 plaintiffs. I would hold that because the verified complaint contains no facts and the plaintiffs have provided no evidence tending to demonstrate the violation of a constitutional right, the question before the court is a purely legal one subject to appellate review, and that the district court's denial of summary judgment toSizemore on these claims should be reversed.
 
 
 
 Notes:
 
 
 [1]
 It is worth noting, however, that at least one of the signatories to the verified complaint, Lowell Thomas, Jr., admitted at his deposition that he in fact had not been terminated by Sizemore, but had voluntarily quit his county job shortly after the primary election. He was permitted by the district court to dismiss his complaint voluntarily.
 
 
 [2]
 Those unsupported opinions include the opinions of defendant Billy Sizemore noted by the majority as evidence of defendant Onzie Sizemore's motives.
 
 
 [3]
 There is Kentucky law supporting this understanding. See Christian v. Belcher, 888 F.2d 410, 414-15 (6th Cir. 1989) (noting that the court had been unable to find any authority contrary to the district court's explicit holding that under Kentucky law, the terms of all county employees expire automatically at the end of each executive administration); 82 Ky. Op. Att'y Gen. 63 at 2-76 (1982); 78 Ky. Op. Att'y Gen. 432 at 2-178 (1978).
 
 
 [4]
 Defendant Sizemore testified that only three of these employees were new. There is no testimony in the record to the contrary. It is clear that two of the new employees were Clarence Napier and Clayton Baker, who were appointed to the positions of County Road Foreman and Assistant Road Foreman, positions we have held to be inherently political.
 
 
 [5]
 For example, Dolly Kilburn, Hattie Asher and Jackie Roberts provided affidavits indicating that they had openly supported Judge Muncy, that they had done so in the presence of defendant Sizemore or under circumstances such that Sizemore would have been aware of their activities, and that they had been rehired by defendant Sizemore after he took office.